**UNITED STATES of America, Appellee,**

v.

**Steven Richard MOTTL, Appellant.**

**No. 91–1436.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 27, 1991.

Decided Oct. 15, 1991.

Andrew S. Birrell, Minneapolis, Minn., for appellant.

Christopher J. Bebel, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Steven Richard Mottl entered a conditional plea of guilty to one count of embezzlement by a bank employee under 18 U.S.C. § 656 (1988). Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, he reserved the right to appeal the denial of a motion in limine to suppress inculpatory statements given to FBI agents. On appeal from the judgment of conviction, Mottl contends that the district court[1] erred in denying his motion to suppress these inculpatory statements, which he made without the receipt of *Miranda* warnings during an interview at FBI headquarters. We affirm.

## I. BACKGROUND

On January 18, 1990, Twin City Federal Bank's (TCF) West St. Paul branch discovered a $10,000 shortage in a bank vault. Later that spring, FBI Special Agent Chris Freihofer contacted Mottl, the bank employee who balanced the vault on the day of the shortage. Freihofer, who conducted the investigation into the disappearance of the funds, requested an interview with Mottl at a location of Mottl's choice. Mottl did not want the interview to take place where he worked. At Freihofer's suggestion, and after Mottl secured permission from his supervisor for an extended lunch break, the interview took place at FBI headquarters in Minneapolis.

On May 18, 1990, Mottl travelled from his place of employment to the FBI. He waited in the lobby until agents Freihofer and Al Bramucci greeted him at 11:45 a.m. They proceeded through an electronically locked door, behind a panel of bulletproof glass, and into a windowless interview room. Agents Freihofer and Bramucci sat on one side of a desk. Appellant Mottl sat facing them. The interview proceeded behind a closed door.

---

**1.** The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

At approximately 1:00 p.m., Mottl confessed. He told the agents that he put the missing $10,000 in his pocket while alone in the bank vault. At this point, agent Freihofer stated that Mottl could return to work and that the FBI would not arrest him until a later date.

Mottl remained in the interview room with the agents and began to discuss fishing. He invited Bramucci and Freihofer up to his lake cabin to go fishing after the investigation terminated. At 1:30 p.m., Mottl signed a written confession drafted by Freihofer. Mottl left to return to work at approximately 1:45 p.m.

The FBI agents left Mottl alone in the room at two points during the interview, when they went to obtain glasses of water. They never told Mottl that he could not leave. The agents at no time advised him of his Miranda[2] rights.

On November 11, 1990, a grand jury indicted Mottl for one count of embezzling $10,000 from TCF in violation of 18 U.S.C. § 656. Mottl moved to suppress the oral and written confessions made at FBI headquarters. At the suppression hearing on December 10, 1990, agent Freihofer testified that he did not give a Miranda warning because "we did not have him in custody before, during or after the interview, nor did we intend to." During the interview at FBI headquarters, Mottl testified, "I didn't feel that I was free to leave." Both conceded the "friendly" tone of the interview.

The district court denied the motion to suppress and a subsequent motion to reconsider on the ground Mottl was not in custody at the time of the interview. Appellant then entered a conditional guilty plea with the right to appeal the ruling on the suppression motion. On February 26, 1991, the district court submitted a supplemental order and memorandum in light of the Eighth Circuit's opinion in United States v. Griffin, 922 F.2d 1343 (8th Cir.1990). The district court sentenced Mottl to five years of probation, 200 hours of community service and ordered him to pay restitution to TCF in the amount of $10,000.

## II. DISCUSSION

The sole issue on appeal is whether Mottl was in custody within the meaning of Miranda when he made the inculpatory statements. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Appellant contends that the district court clearly erred by denying the motion to suppress, asserting that his subjective belief that he could not leave the interview was objectively reasonable under the circumstances. Thus, appellant claims the FBI agents subjected him to custodial interrogation without the appropriate Miranda safeguards and the district court should have suppressed the confessions. The issue presented raises a mixed question of fact and law.

### A. Availability of Procedural Safeguards

▇▇▇▇ The procedural safeguards embodied in the Miranda decision come into play only when police interrogate a suspect in a custodial setting. See, e.g., Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985); Miranda, 384 U.S. at 444, 478, 86 S.Ct. at 1612, 1630; United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir.1990); United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir.1989). In Miranda, the Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612 (footnote omitted). In undertaking a custody determination, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984) (footnote omitted). In essence, we look at whether, under the totality of the circumstances, the suspect subjectively and reasonably believed that the police curtailed his freedom of movement to a " 'degree associated with formal

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

arrest.' " *Griffin*, 922 F.2d at 1347 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam), *quoted in Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150).

### B. Custody Analysis

The issue of whether a suspect is in custody for the purpose of *Miranda* has generated extensive litigation.[3] Even the Supreme Court has observed that "the task of defining 'custody' is a slippery one." *Elstad*, 470 U.S. at 309, 105 S.Ct. at 1293. The present case, which presents a very close question, is no exception.

■ We are bound, however, by the analysis set forth in *Griffin*, in which this court isolated six "common indicia of custody." *Griffin*, 922 F.2d at 1349. The "indicia of custody" inquiry focuses on tactics employed by the police during questioning "which tend to either mitigate or aggravate an atmosphere of custodial interrogation." [4] *Id.* In making a custody determination under *Griffin*, a court looks at:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or

deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id.*

■ The district court held that Mottl's interrogation at FBI headquarters was non-custodial under *Griffin*. The FBI agents failed to inform Mottl at the outset of questioning that they had no intent to arrest him and that he could terminate the interview at will, which indicates a custodial setting. The district court ruled the absence of a formal warning inconclusive, however, in light of the other five indicia of custody. As for the remaining indicia of custody, the district court concluded that: (2) the agents did not escort Mottl at all times during the interrogation; (3) Mottl voluntarily acquiesced to the interview; (4) the agents did not employ strong arm tactics or deceptive stratagems; (5) the agents did not create a police dominated atmosphere and (6) the interview did not conclude with Mottl's arrest.

On appeal, Mottl contends that the district court erred in its application of *Griffin*. First, the agents failed to inform Mottl that he did not have to participate in the interview and waited until he confessed to tell him that they would arrest him at a later date. Second, Mottl subjectively felt the kind of restraint associated with formal arrest. Third, the FBI agents initiated contact with Mottl. Fourth, the agents em-

---

**3.** *See, e.g., United States v. Carter*, 884 F.2d 368 (8th Cir.1989); *United States v. Lanier*, 838 F.2d 281 (8th Cir.1988); *United States v. Richmann*, 860 F.2d 837 (8th Cir.1988), *cert. denied*, 490 U.S. 1089, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1989); *United States v. Longbehn*, 850 F.2d 450 (8th Cir.1988); *United States v. Goudreau*, 854 F.2d 1097 (8th Cir.1988); *Wilson v. Coon*, 808 F.2d 688 (8th Cir.1987); *United States v. Venerable*, 807 F.2d 745 (8th Cir.1986); *United States v. Jones*, 801 F.2d 304 (8th Cir.1986); *United States v. Helmel*, 769 F.2d 1306 (8th Cir.1985); *United States v. G & G Advertising Co.*, 762 F.2d 632 (8th Cir.1985); *United States v. Vardell*, 760 F.2d 189 (8th Cir.1985); *United States v. Rorex*, 737 F.2d 753 (8th Cir.1984); *United States v. Dockery*, 736 F.2d 1232 (8th Cir.), *cert. denied*, 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 129 (1984).

**4.** As the *Griffin* court carefully explained, no factor qualifies as dispositive in any given case. The first three indicia are "mitigating factors," the presence of one or more of which "would tend to mitigate the existence of custody at the time of the questioning." 922 F.2d at 1349. The final three indicia comprise "coercive factors," the presence of one or more of which would tend to compel a finding of custody. *Id.* A court may make a finding of custody even without the affirmative presence of each indicia of custody. *Id.* (citing *United States v. Longbehn*, 850 F.2d 450, 452–53 (8th Cir.1988)). "[A] particularly strong showing with respect to one factor," by contrast, "may compensate for a deficiency with respect to other factors." *Id.* (citing *South Dakota v. Long*, 465 F.2d 65, 70 (8th Cir.1972)).

ployed deceptive stratagems by suggesting that the courts would be lenient on Mottl. Fifth, the interview took place at FBI headquarters, an inherently police dominated atmosphere. Sixth, Mottl did not know at the time of his inculpatory statement that the agents did not intend to arrest him. Thus, appellant contends the district court should have ruled that Mottl was in custody under *Griffin*. *See* 922 F.2d at 1349–52.

After reviewing the record, we are persuaded that we should affirm the district court. No apparent error exists in its factual findings, including inferences drawn therefrom, or in its conclusion of no custody.

With respect to the first indicia of custody, failure to advise, there is no question that the FBI agents neglected to inform Mottl that he could terminate the interview at will. Nor did they let him know at the outset of the interrogation that they did not intend to arrest him. If *Griffin* analysis ended here, we would likely hold that Mottl confessed in a custodial setting. *See Griffin*, 922 F.2d at 1350 (citing *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 492, 112 L.Ed.2d 489 (1990)). The remaining factors, however, entitled the district court to arrive at a contrary conclusion.

The second indicia, restraint of freedom of movement, weighs in favor of a noncustodial setting on these facts. Appellant stated his opinion that he felt that he could not leave the interview room. This conclusion, however, is not binding as objectively reasonable under *Griffin*. *See* 922 F.2d at 1350–51. The agents left the interview room twice and never told Mottl to remain in place. *Compare United States v. Carter*, 884 F.2d 368, 372 (8th Cir.1989) (custody found where suspect told to "just stay here") *with United States v. Jorgensen*, 871 F.2d 725, 727 (8th Cir.1989) (no custody where suspect allowed to leave interview room to confer with his brother in unlocked, unguarded section of FBI headquarters). Like the interrogating FBI

agents in *Jorgensen*, agents Bramucci and Freihofer did not restrain Mottl's freedom of movement to a degree associated with custody or formal arrest. *See Griffin*, 922 F.2d at 1350 n. 6; *Jorgensen*, 871 F.2d at 729.

The remaining indicia also indicate that, on balance, Mottl was not in custody during the interview. Agent Freihofer initiated contact by asking Mottl to agree to questioning, a factor which weighs in favor of finding custody under *Griffin*. The agents did not, however, employ strong arm tactics or deceptive stratagems. *See Griffin*, 922 F.2d at 1351. Freihofer and Mottl described the atmosphere of the interview as "friendly." Agent Freihofer testified that Bramucci told Mottl he would inform the Assistant United States Attorney, not the courts, that Mottl had been cooperative. Thus, we reject Mottl's claim that the agents relied upon deceptive stratagems about leniency in sentencing in order to secure a confession.

Similarly, agents Freihofer and Bramucci did not dominate the atmosphere of the interview. Unlike the law enforcement officers in *Griffin*, the FBI agents here neither caught Mottl by surprise in his home nor removed family members who might have lent moral support. *See id.* at 1351–52, 1355. Finally, and also unlike *Griffin*, the agents did not arrest Mottl at the conclusion of the interview. *See id.* at 1355. Read together, the *Griffin* indicia of custody undercut the reasonableness of Mottl's conclusion that he was in custody at FBI headquarters.

The issue, nonetheless, is close. Where, as here, the undisputed facts may give rise to disparate conclusions of law, we are inclined to defer to the findings of the district judge, who heard the testimony of the witnesses at the suppression hearing.[5] Although we affirm in this case, we add a comment. Given the FBI's acknowledged record of fairness toward criminal sus-

---

**5.** We note also that the district court submitted a well-reasoned supplemental order and memorandum re-analyzing its decision to deny the suppression motion in light of the *Griffin* indicia of custody analysis. Thus, this is not a case

in which deference is inappropriate because the district court failed to apply relevant standards or left us "with a confusing muddle on appeal." *United States v. Jorgensen*, 871 F.2d 725, 734 n. 3 (8th Cir.1989) (Heaney, J., dissenting).

pects,[6] we see no reason why the agents elected not to read Mottl the *Miranda* warning. This decision to affirm should not be viewed as a license to depart from that legacy of fairness, for, in somewhat similar circumstances, the fact finder might well conclude that custody existed and we would be obliged to affirm such ruling.

## III. CONCLUSION

Accordingly, we affirm the district court.

---

**6.** The Supreme Court observed in *Miranda:*

Over the years the Federal Bureau of Investigation has compiled an exemplary record of effective law enforcement while advising any suspect or arrested person, at the outset of an interview, that he is not required to make a statement, that any statement may be used

against him in court, that the individual may obtain the services of an attorney of his own choice and, more recently, that he has a right to free counsel if he is unable to pay.

384 U.S. at 483, 86 S.Ct. at 1632 (footnote omitted).