UNITED STATES of America,
Plaintiff,

v.

Christopher Kobe RAINBOW,
Defendant.

No. C1–05–034.

United States District Court,
D. North Dakota,
Southwestern Division.

Aug. 9, 2005.

Kent M. Morrow, Severin & Ringsak, Bismarck, ND, for Defendant.

Rick L. Volk, U.S. Attorney's Office, Bismarck, ND, for Plaintiff.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress Statements filed on June 9, 2005. A hearing on the motion was held on July 20, 2005, in Bismarck, North Dakota. For the reasons set forth below, the motion is denied.

### I. *BACKGROUND*

On April 27, 2005, the defendant, Christopher Kobe Rainbow, was charged in a two-count indictment with the offenses of assault with a dangerous weapon and assault resulting in serious bodily injury on or about December 10, 2004. On December 20, 2004, FBI Special Agent Chad Schliepsiek, FBI Victim Witness Specialist Kristie Anderson, and BIA Special Agent David Lawrence arrived at Rainbow's house to discuss the events of December 10, 2004, but Rainbow was not home. The agents drove to Rainbow's mother's place of work in order to locate Rainbow. Rainbow's mother informed BIA Agent Lawrence that Rainbow was home. BIA Agent Lawrence did not inform Rainbow's mother for what purpose he wished to visit with her son and Rainbow's mother did not request to be present during the visit with her son.

The agents drove to the Rainbow residence again, parked in the driveway, and walked up to the house and knocked on the door. Rainbow's step-father answered the door, and the agents requested to speak with Rainbow. Rainbow came to the door and Agents Schliepsiek and Lawrence identified themselves. The agents indicated to Rainbow that they wished to speak with him regarding an assault that occurred on December 10, 2004. FBI Agent Schliepsiek offered to conduct the questioning either in the Rainbow residence or in his vehicle. Rainbow chose to be questioned in Agent Schliepsiek's vehicle. Rainbow walked to Agent Schliepsiek's vehicle without being escorted, restrained, or handcuffed.

FBI Agent Schliepsiek's vehicle was an unmarked sport utility vehicle that had no markings of a police vehicle, such as emergency lights or cage-like dividers between the front and rear seats. Rainbow sat in the front passenger seat, Agent Schliepsiek sat in the driver seat, and Anderson and Lawrence sat in the rear of the vehicle. FBI Agent Schliepsiek questioned Rainbow in a conversational manner for approximately one hour. Neither Lawrence nor Anderson participated in the questioning. Agent Schliepsiek specifically informed Rainbow that he was not under arrest, that the interview was voluntary, that Rainbow was free to leave at any time, and that Rainbow would not be arrested upon conclusion of the interview. Rainbow was not advised of his *Miranda* rights.

Rainbow did not ask to leave the vehicle at any time, nor was he prevented from leaving the vehicle. FBI Agent Schliepsiek's vehicle was unlocked throughout the interview. Rainbow never asked to terminate the interview. Agent Schliepsiek did not make threats, use deceptive practices, or raise his voice. Agents Schliepsiek and Lawrence both testified that Rainbow was awake, alert, and coherent during the entire interview. Rainbow did not appear to be under the influence of drugs or alcohol. Rainbow did not complain of any incapacity or illness that would have caused him to make statements involuntarily. FBI Agent Schliepsiek never threatened Rainbow with force in order to obtain a "confession" from Rainbow. At the end of the interview, Agent Schliepsiek reviewed his notes with Rainbow, and Rainbow agreed that the notes were accurate. Rainbow exited Agent Schliepsiek's vehicle and returned to his residence.

The evidence reveals that Rainbow's step-father approached FBI Agent Schliepsiek's vehicle two times during the interview of Rainbow. On the first occasion, the step-father approached to ensure that everything was going okay. Rainbow did not ask to leave nor did he request his step-father's presence during the remainder of the interview. On the second occasion, the step-father asked to speak with FBI Agent Schliepsiek upon conclusion of the interview. After Rainbow exited Agent Schliepsiek's vehicle, the step-father spoke with Agents Schliepsiek and Lawrence regarding the investigation process.

Rainbow gave a statement to FBI Agent Schliepsiek concerning the events that took place on or about December 10, 2004. Rainbow stated that on the evening of December 10, 2004, he attended a party at a residence (later identified as the residence of Lisa Blackhoop) in Fort Yates, North Dakota. Rainbow indicated that he was not intoxicated that evening and clearly remembered the events of the evening. At the party Rainbow drank a six-pack of beer. Rainbow and the victim, Emmette Ramsey, began to argue and Rainbow removed himself from the party by walking into another room. Shortly thereafter, Ramsey left the party and walked home. Rainbow followed Ramsey to the front of

Ramsey's residence. Rainbow punched Ramsey twice in the face, which caused Ramsey to fall to the ground. While on the ground, Ramsey held onto one of Rainbow's legs. Rainbow picked up a trampoline bar and hit Ramsey several times with the bar. The fight ended when Rainbow kicked Ramsey in the face. Rainbow left the scene with the trampoline bar and disposed of the bar in a yard next to where the fight took place. Rainbow indicated that he loses his temper when he gets mad, and the fight with Ramsey was such an instance.

Rainbow contends that the "confession" given to FBI Agent Schliepsiek was coercive, involuntary, and a violation of his Fifth Amendment rights. Rainbow perceived that he was in the custody of the FBI because he was not read his *Miranda* rights and was questioned in Agent Schliepsiek's vehicle. The Government asserts that the FBI was not required to read Rainbow his *Miranda* rights because he was not arrested, was informed by FBI Agent Schliepsiek that he would not be arrested, and was not "in custody" during the interview.

## II. *LEGAL DISCUSSION*

### A. *CUSTODY UNDER MIRANDA*

■ Rainbow contends that the statements made to the FBI on December 20, 2004, were in violation of his Fifth Amendment rights. It is well-established that law enforcement officers must administer *Miranda* warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda v. Arizona*, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A person is in custody when he is either formally arrested or his freedom of movement is constrained to a degree equivalent with formal arrest. *U.S. v. Brave Heart*, 397 F.3d 1035, 1038 (8th

Cir.2005). The *Miranda* custody test is an objective test; two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation and leave. *Yarborough v. Alvarado*, 541 U.S. 652, 663, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (citing *Thompson v. Keohane*, 516 U.S. 99, 133, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). In *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court affirmed that an objective test is preferable to a subjective test because under the objective analysis the police do not have the burden of anticipating the frailties or idiosyncrasies of every person whom they question.

■ It is well-established in the Eighth Circuit that the totality of circumstances must be looked at *and* that six factors are to be considered in determining whether an individual was held in custody: (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether there was a police-dominated atmosphere; and (6) whether the suspect was placed under arrest at the termination of the questioning. *U.S. v. Griffin*, 922 F.2d 1343, 1349 (8th Cir.1990). However, the Eighth Circuit does not require that the *Griffin* test be followed ritualistically in every *Miranda* case. *U.S. v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). "When the factors are invoked, it is important to recall that they are not by

any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Id.* The most obvious way to demonstrate that a person is not in custody is to tell him that he is not in custody and that he may terminate the questioning at any time. *U.S. v. Czichray*, 378 F.3d 822, 826; *see U.S. v. Brave Heart*, 397 F.3d 1035, 1039.

To determine whether Rainbow was in custody at the time of the questioning in this case, the Court must consider the *Griffin* factors and the totality of the circumstances that confronted the defendant at the time of questioning.

## B. *GRIFFIN FACTORS*

■ The first *Griffin* factor to be considered is whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest. In *U.S. v. Mottl*, 946 F.2d 1366, 1367–1370 (8th Cir.1991), the Court found that a suspect who was not informed of his right to terminate the questioning at will and that he would not be arrested, was not in custody because the other *Griffin* factors weighed in favor of a non-custodial setting. In this case, Rainbow was specifically informed at the onset of the interview that he was not under arrest, that he would not be arrested at the conclusion of the interview, and that he was free to leave at any time during the questioning. The Court finds that this factor weighs in favor of a non-custodial setting for *Miranda* purposes.

■ The second indicia of custody is whether the suspect possessed unrestrained freedom of movement during the questioning. In *U.S. v. Mottl*, the Court found that questioning conducted at the FBI headquarters was a non-custodial setting even though the suspect was led through an electronically locked door behind bulletproof glass and questioned behind a closed door. 946 F.2d 1366, 1367. In this case, Rainbow walked on his own accord to FBI Agent Schliepsiek's unmarked vehicle without the use of physical force or restraint from the agents. The agents did not restrain Rainbow from leaving the vehicle nor did they inform Rainbow that he could not leave the vehicle. Rainbow's step-father approached the vehicle on two occasions during the questioning, and on neither occasion was the step-father asked to leave. Rainbow was not restrained or handcuffed during the questioning, and FBI Agent Schliepsiek's vehicle was unlocked throughout the interview. The Court finds that Rainbow possessed unrestrained freedom of movement during the interview conducted by FBI Agent Schliepsiek. This factor weighs in favor of a finding that Rainbow was not in custody during the interview process.

■ The third factor of a *Griffin* custody analysis is whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities. In this case, Rainbow spoke in a conversational manner to FBI Agent Schliepsiek. Agent Schliepsiek never threatened Rainbow with force in order to obtain a "confession." Rainbow did not refrain from answering the agent's questions or refrain from being questioned by the agent in the agent's vehicle. Rainbow's step-father testified that Rainbow's mood was "normal" at the conclusion of the interview. The Court finds that Rainbow voluntarily acquiesced to questioning by FBI Agent Schliepsiek and that this indicia weighs in favor of a finding that Rainbow was not in custody during the interview.

■ The fourth indicia, whether the agents employed strong arm tactics or deceptive stratagems during questioning, also weighs in favor of a finding that the

interview was conducted in a non-custodial setting. In *U.S. v. LeBrun*, 363 F.3d 715, 718 (8th Cir.2004), FBI agents picked up the suspect at his place of employment, drove him in an unmarked police car to the station, and questioned him using psychological ploys. The agents told Lebrun that his financial resources would be drained through the trial process, that his family's reputation would be ruined, that the FBI had ample evidence against him, and brought a man posing as the victim's brother to the interview in order to get a confession out of Lebrun. 363 F.3d 715, 718. However, the Court stated that the coercive aspects of a police interview are largely irrelevant and found that the defendant was not in custody. *Id.* at 721. In this case, the undisputed evidence reveals that FBI Agent Schliepsiek spoke to Rainbow in a conversational manner and that the interview was friendly. Agent Schliepsiek did not raise his voice, accuse Rainbow of lying, or use any psychological ploys. Further, Rainbow does not contend that the agents used any psychological ploys or deceptive stratagems during the interview. The Court finds that FBI Agent Schliepsiek did not employ psychological ploys, deceptive stratagems, or strong arm tactics during the questioning of Rainbow, which weighs in favor of a finding that Rainbow was not in custody during the interview.

■ The fifth *Griffin* factor is whether there was a police-dominated atmosphere. In *U.S. v. Mottl*, the Court found that two agents questioning the suspect at FBI Headquarters was not a police-dominated environment because the agents did not catch Mottl by surprise in his home nor removed family members who might have lent moral support. 946 F.2d 1366, 1370. Here, Agents Schliepsiek and Lawrence approached Rainbow at his home, but the agents gave Rainbow the option of where to conduct the questioning. Only FBI Agent Schliepsiek questioned Rainbow.

Agent Lawrence and Victim Witness Specialist Anderson were present in the backseat of the vehicle, but they did not participate in the questioning of Rainbow. None of the agents were dressed in uniform. None of the agents exposed their weapons. The Court finds that the agents approaching Rainbow at his residence and conducting the interview in Rainbow's chosen location, namely FBI Agent Schliepsiek's vehicle, was not a police-dominated environment. The agents treated Rainbow in a respectful manner and the interview was not lengthy. This finding weighs in favor of a non-custodial setting.

■ The remaining factor of a *Griffin* custody analysis is whether the suspect was arrested. Unlike the defendant in *Griffin*, Rainbow was not placed under arrest during questioning or at the conclusion of the interview. Instead, Rainbow exited FBI Agent Schliepsiek's vehicle and returned to his residence. The Court finds that this factor weighs in favor of a finding that the interview was conducted in a non-custodial setting.

In *U.S. v. Bordeaux*, 400 F.3d 548, 559–560 (8th Cir.2005), the Eighth Circuit held that the defendant was not in custody even though he was of below-average intelligence, was questioned in an FBI agent's vehicle, was informed that he would not be arrested, and was free to leave at any time. The facts in *Bordeaux* are similar to the present case. An FBI agent and a BIA agent arrived at Bordeaux's residence. The FBI agent gave Bordeaux the option of conducting the interview in his home or in the agent's unmarked sport utility vehicle. Bordeaux chose to be questioned in the agent's vehicle. The agent informed Bordeaux that he was not under arrest, that he would not be arrested at the end of the interview, and that he could end the interview at any time. Bordeaux left the interview to use the bath-

room and returned to the agent's vehicle several minutes later. Bordeaux was questioned for an hour and forty-five minutes before he stopped the interview, stating that he would not answer anymore questions until he was represented by an attorney. The district court denied the defendant's motion to suppress statements made to the FBI agent and found that Bordeaux was not in custody. On appeal, the Eighth Circuit found that Bordeaux had unrestrained freedom during the interview and was not in custody during the interview. 400 F.3d 548, 560. The Court further held that it was not reasonable for Bordeaux to believe that he was in custody, even considering his below-average intelligence. *Id.*

 In this case, Rainbow's interrogation by FBI Agent Schliepsiek on December 20, 2004, is remarkably similar to that of the defendant in *Bordeaux*. FBI Agent Schliepsiek questioned Rainbow in an unmarked sport utility vehicle parked in Rainbow's driveway. Rainbow was informed at the onset of the questioning that he was not in custody, that he was not under arrest, that he would not be arrested following the interview, and that he could terminate the interview at any time. Rainbow was not handcuffed, escorted, or placed within the vehicle by the agents. Rainbow walked out of his home without restraint, walked to the agent's vehicle, opened the door, and sat in the front seat of the vehicle. The agent's vehicle, as in *Bordeaux*, was an unmarked sport utility vehicle with no police markings and no cage dividing the front and rear seats. FBI Agent's Schliepsiek's doors on the vehicle were unlocked throughout the interview. Both the defendant in *Bordeaux* and Rainbow walked away at the conclusion of the interview without being arrested. The Court expressly finds that Rainbow had unrestrained freedom during the interview and that he was not in custody during the interview process.

This Court has carefully reviewed the entire record and finds from the totality of the circumstances that Rainbow was not in custody when interviewed by FBI Agent Schliepsiek on December 20, 2004. Rainbow was not handcuffed or restrained in any manner before, during, or after the interview with FBI Agent Schliepsiek. Rainbow walked freely to the agent's vehicle which was parked in the defendant's driveway. Agent Schliepsiek informed Rainbow at the onset of the interview that he was not in custody, that he was not under arrest, that he would not be arrested following the interview, and that he was free to terminate the interview at any time. The interview was cordial and voluntary. At all times during the interview process, Rainbow was treated in a professional and respectful manner. A reasonable person under the circumstances of the interview would have felt free to terminate the interview and leave. The Court expressly finds that Rainbow was not in custody during the interview conducted by FBI Agent Schliepsiek on December, 20, 2004.

## C. *VOLUNTARINESS OF STATEMENTS*

 Rainbow also contends that the statements made to FBI Agent Schliepsiek were involuntarily made. A statement is involuntary when threats, violence, or express or implied promises sufficient to overbear the suspect's will and critically impair his capacity for self-determination are used. *U.S. v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir.2005). The Court is required to examine the totality of the circumstances, including the conduct of law enforcement officers in exerting pressure to confess, and the defendant's ability to resist that pressure to determine if the suspect's will is overborne. A statement is involuntary if it was extracted through the use of physical or psychological pressure.

*U.S. v. Bordeaux,* 400 F.3d 548, 560 (8th Cir.2005). The government bears the burden of proving that the statements by the suspect were made voluntarily by a preponderance of the evidence. The Court cannot find that "a statement was involuntary unless it is established that law enforcement officials engaged in coercive activity." *U.S. v. Bordeaux,* 400 F.3d 548, 560 (8th Cir.2005). Rainbow alleges that his statements were involuntary because of his age (18), the location of the interview, and the alleged refused access of his mother during the interview.

■ It is undisputed that at the time of the interview, Rainbow was an adult. Rainbow alleges that because he was only 18-years old at the time of the interview, his will was overborne. The Defendant cites to the Supreme Court decision of *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) as support for the contention that age is relevant in determining the voluntariness of statements by a suspect. In *Haley,* the police questioned a fifteen-year-old suspect shortly after midnight for five hours. The suspect was questioned by five officers during the course of the interview. After confessing, the suspect was immediately placed in jail under solitary confinement for three days. The police refused to let the suspect see his mother or a lawyer for five days. The Supreme Court took into consideration the suspect's age in determining the voluntariness of his confession. The Court found that the suspect's will was overborne from the pressures of the agents in protracting a confession, and that the suspect's confession was involuntary.

The facts of the *Haley* case are clearly distinguishable from Rainbow's interview with FBI Agent Schliepsiek. Rainbow was not fifteen years of age, but was an adult. Rainbow was not being interviewed at a police station by five officers. Instead, Rainbow was interviewed by one FBI agent, with two other agents silently present and sitting in the back seat of a vehicle. Rainbow chose to be interviewed in a vehicle rather than in his residence. Rainbow walked without restraint to FBI Agent Schliepsiek's unmarked vehicle which was parked in Rainbow's driveway. Rainbow was informed that he was not under arrest, that he would not be placed under arrest following the interview, and that he was free to leave at any time. Rainbow was not restricted from speaking with his step-father who approached FBI Agent Schliepisek's vehicle twice during the interview. Rainbow was not arrested following the interview, but instead walked freely back to his residence. The Court finds that Rainbow's age did not overbear his will to confess.

The Eighth Circuit in *U.S. v. Bordeaux* concluded that the statements made by Bordeaux to an FBI agent in an unmarked vehicle were voluntary. *U.S. v. Bordeaux,* 400 F.3d 548, 560 (8th Cir.2005). The vehicle that Bordeaux was questioned in was an unmarked sport utility vehicle that was devoid of many of the potentially intimidating trappings of police cars, such as a divider between the front and back seats. The vehicle was parked in front of Bordeaux's residence, not a secluded spot. The tribal investigator did not actively participate in the interview, but merely observed the questioning from the back seat. Bordeaux chose to speak in the vehicle rather than in his home, which showed that the vehicle was not a coercive setting. Similarly, in this case Rainbow was questioned only by one agent. Both the defendant in *Bordeaux* and Rainbow were given the option of being questioned either in their home or in the agent's vehicle, and both defendants chose to be questioned in the vehicle.

In addition, Rainbow was not denied access to his parents. Rainbow's step-

father freely approached FBI Agent Schliepsiek's vehicle on two occasions during the interview on December 20, 2004. The agents did not deny Rainbow access to speak with his step-father, nor did they refuse the step-father the opportunity of being present during the interview. The fact remains that the step-father never asked the agents to be present during Rainbow's interview. Nor did the agents prevent Rainbow's mother from being present during the interview. Rainbow's mother provided information to Agent Lawrence as to Rainbow's whereabouts. She was aware that Agent Lawrence wished to speak with Rainbow, but she never requested to be present. Rainbow also never requested his parents' presence during the interview.

The Court finds that the statements made by Rainbow were voluntary. Rainbow was an adult at the time of the interview. He spoke openly and in a conversational manner about the events that took place on December 20, 2004. Rainbow exited FBI Agent Schliepsiek's vehicle in a normal state of mind, indicating that his will was not overborne due to his age. Rainbow was not denied access to his parents during questioning, which is evidenced from Rainbow's step-father approaching Agent Schliepsiek's vehicle on two occasions. Rainbow chose the location of the questioning which is an indication of the voluntary nature of the questioning. In addition, Rainbow was not under the influence of drugs or alcohol at the time of questioning, nor did he complain of any physical or mental disability which would have affected the voluntariness of the statement. A careful review of the entire record and the totality of the circumstances clearly supports a finding that the statements provided by Rainbow to FBI Agent Schliepsiek were voluntary in nature.

## III. *CONCLUSION*

For the reasons set forth above, the Court **DENIES** the Defendant's Motion to Suppress Statements (**Docket No. 24**).

**IT IS SO ORDERED.**