# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1476
_____

United States of America,

*Plaintiff - Appellee,*

v.

Justin Treanton,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: September 23, 2022
Filed: January 18, 2023
_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Justin Treanton pleaded guilty to two child pornography offenses. The district court[1] sentenced him to 600 months' imprisonment. On appeal, Treanton challenges the district court's denial of his motion to suppress evidence and the sentence

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

imposed. We conclude that there is no reversible error, and therefore affirm the judgment.

## I.

In January 2020, a computer user sent electronic files containing child pornography to an undercover officer in New Zealand on a social media platform. The user identified himself as a thirty-five-year-old male from the United States, and told the officer that the files depicted his four-year-old daughter. The officer alerted federal law enforcement agents in the United States, and agents traced the user's internet protocol address to a house in Bettendorf, Iowa. Information about a driver's license and vehicle associated with the address revealed that Treanton was the only male resident aged thirty-five years.

Federal and state law enforcement agents executed a search warrant at the Bettendorf residence, but Treanton was not present. After further investigation, agents determined that Treanton might be located at a different house in Bettendorf. The agents visited that house and obtained consent from its owner to search the garage for Treanton.

In the garage, agents found Treanton hiding behind stacks of boxes and debris. The agents instructed Treanton to climb over the debris toward them. Treanton began climbing but stalled due to conflicting instructions from the agents. An agent near the bay door then pulled Treanton down from the debris pile, and caused him to fall to the ground.

The agents believed that they saw Treanton holding a large object and ordered him to show his hands. When Treanton refused, an agent punched him once in the face and placed him in handcuffs. The agents then searched Treanton. When they

did not find a weapon, the agents removed the handcuffs and told Treanton that he was not under arrest.

Two agents walked Treanton to a vehicle near the garage for an interview. Once in the vehicle, the agents told Treanton several times that he was not under arrest. The agents also advised Treanton that he was free to leave whenever he wished, and did not have to answer any questions. Treanton talked with the agents for over ninety minutes and made incriminating statements about photos and videos that contained child pornography. He also consented to a search of his two cellular devices. Near the end of the interview, a county attorney instructed the agents to arrest Treanton on state criminal charges. The agents then informed Treanton of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and transported him to jail.

A grand jury charged Treanton with child pornography offenses in violation of 18 U.S.C. §§ 2251 and 2252. Treanton moved to suppress statements made during the interview in the vehicle on the ground that the agents subjected him to custodial interrogation without *Miranda* warnings. The district court concluded that Treanton was not in custody during the interview before agents told him that he was under arrest, and denied the motion to suppress.

Treanton then entered a conditional guilty plea to one count of producing child pornography and one count of possessing child pornography, reserving the right to appeal the denial of his motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced Treanton to a guideline sentence of 600 months' imprisonment, which was the statutory maximum term.

II.

Treanton first argues that the district court erred by denying his motion to suppress statements from his interview. He contends that agents subjected him to

custodial interrogation without advising him of his rights under the *Miranda* decision. Treanton does not dispute any factual findings, and we review *de novo* the district court's legal determination that Treanton was not in custody. *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002).

The critical inquiry in determining whether a person is in 'custody' for purposes of *Miranda* is "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Simpson*, 44 F.4th 1093, 1096 (8th Cir. 2022) (internal quotations omitted); *see California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam). We consider "the circumstances surrounding the questioning and whether, given those circumstances, a reasonable person would have felt free to terminate the questioning and leave." *United States v. Ferguson*, 970 F.3d 895, 901 (8th Cir. 2020).

Treanton argues that because agents struck him and handcuffed him during the initial encounter in the garage, he was in custody during the later interview in the vehicle. Even with a use of force and temporary use of restraints, however, the initial investigative detention was not the functional equivalent of a formal arrest. *See United States v. Rodriguez*, 711 F.3d 928, 935 (8th Cir. 2013). Agents promptly released Treanton from restraints as soon as concerns about officer safety were resolved, and they informed him that he was not under arrest. Advice that a suspect is free to leave "generally removes any custodial trappings from the questioning," even when the suspect was handcuffed earlier in the encounter. *United States v. Laws*, 819 F.3d 388, 397 (8th Cir. 2016) (internal quotation omitted).

The remaining circumstances do not establish that Treanton was in custody during the interview. Agents did not physically restrain him in the vehicle. Only two agents questioned him, and they repeatedly told Treanton that he was not under arrest and was free to leave. The agents were not deceptive or threatening, and Treanton voluntarily answered their questions. Some of our cases have said that an arrest at the

end of questioning is an indicium of custody. *E.g.*, *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). It is not clear why that should be so when the suspect does not know that an arrest is forthcoming: custodial status depends on whether a reasonable person would feel free to leave during the interview. As *Griffin* itself explained, "[t]he rule is that 'a policeman's unarticulated plan has no bearing on the question of whether a suspect is in custody at a particular time; the one relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.'" *Id*. at 1356 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)). *Dicta* in a footnote in *Griffin* said that "[i]n an appropriate case, a post-interview arrest may suggest an 'end run' around *Miranda*," *id*. at 1356 n.15, but this notion was not further explained and has never been adopted in a holding of the court. In any event, the agents here did not intend to arrest Treanton until they were directed to do so near the end of the interview, and the fact of a later arrest does not establish that the preceding interview was custodial. *See United States v. Flores-Sandoval*, 474 F.3d 1142, 1146-47 (8th Cir. 2007).[2]

We agree with the district court that a reasonable person in Treanton's position would have believed that he was free to terminate the interview if he wished. Considering the totality of the circumstances, we conclude Treanton was not in custody for purposes of *Miranda*, and that the district court properly declined to suppress incriminating statements made during the interview before agents informed Treanton that he would be arrested.

---

[2]Given the concurring opinion's emphasis on a list of "*Griffin* factors," it is well to remember that this list is "decidedly non-exhaustive," 922 F.2d at 1349, and need not be applied ritualistically when resolving a custody question under *Miranda*. *United States v. Czichray*, 378 F.3d 822, 827-28 (8th Cir. 2004); *see United States v. LeBrun*, 363 F.3d 715, 719-24 (8th Cir. 2004) (en banc). *Griffin* emphasized that its list was "merely intended to be representative of those indicia of custody most frequently cited by this and other courts when undergoing the prescribed totality of the circumstances analysis." 922 F.2d at 1349.

III.

Treanton also argues that the sentence of 600 months' imprisonment is unreasonable. We review the reasonableness of a sentence under a deferential abuse-of-discretion standard, *Gall v. United States*, 552 U.S. 38, 41 (2007), and we presume that a sentence within the advisory guideline range is reasonable. *United States v. Lincoln*, 413 F.3d 716, 717-18 (8th Cir. 2005); *see Rita v. United States*, 551 U.S. 338, 341 (2007).

Treanton argues that the district court abused its discretion by failing to give more weight to his acceptance of responsibility and by declining to vary downward from the guideline range based on his family circumstances and mental health concerns. The court described Treanton's production offense involving his daughter as a "horrific crime," and declined to vary downward because Treanton was an "extreme danger to the community"—"one of the most dangerous people" the court had "ever sentenced as far as his recidivist behaviors and as far as the severity of what he collected and what he did." The court also observed that Treanton was "off the charts" under the sentencing guidelines, with a calculated offense level of 53 that was capped by law at level 43, and that he obstructed justice by instructing an inmate's mother to destroy evidence on his iPhone. The court properly considered the factors under 18 U.S.C. § 3553(a), and elected to impose Treanton's advisory guideline sentence. We see no compelling circumstances in support of a shorter sentence that demonstrate an abuse of the district court's discretion.

The judgment of the district court is affirmed.

STRAS, Circuit Judge, concurring in the judgment.

For over 30 years, we have considered the same six factors to determine whether an interview is custodial, including "whether the suspect was placed under

arrest at the termination of the questioning." *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (listing the six common indicia of custody); *see United States v. Johnson*, 39 F.4th 1047, 1051–52 (8th Cir. 2022) (applying all six *Griffin* factors). Using those factors, I reach the same conclusion that the court does: Treanton was *not* in custody when he made the incriminating statements. But I would end the analysis there.

I am at a loss why the court says a single word more. It questions why it "should be so" that "an arrest at the end of questioning is an indicium of custody," *ante*, at 4–5, leaving district courts in limbo about whether this factor still counts. For those reading this opinion, the answer is yes. Nothing has changed. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (explaining that "the earliest [panel] opinion must be followed").

Indeed, just a couple of years ago, we explained that "while an interview that ends in arrest *may indicate* a custodial setting, that is not dispositive, especially when the interview arises from reasonable suspicion and the suspect's answers provide probable cause for the arrest." *United States v. Sanchez-Velasco*, 956 F.3d 576, 581 (8th Cir. 2020) (emphasis added). *Sanchez-Velasco* reflects our longstanding rule.[3] There is no reason to introduce uncertainty by questioning one part of a more-than-30-year-old standard, especially when it makes no difference to the outcome.

———————————————

[3]The *Griffin* factors have remained the same—with six factors—since we first adopted them in 1990. *See, e.g.*, *United States v. Ferguson*, 970 F.3d 895, 901 (8th Cir. 2020); *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017); *United States v. Holleman*, 743 F.3d 1152, 1159 (8th Cir. 2014); *United States v. Thomas*, 664 F.3d 217, 222 (8th Cir. 2011); *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146–47 (8th Cir. 2007); *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004); *United States v. Chamberlain*, 163 F.3d 499, 503 (8th Cir. 1998); *Bennett v. Lockhart*, 39 F.3d 848, 856 (8th Cir. 1994); *United States v. Mottl*, 946 F.2d 1366, 1369 (8th Cir. 1991).