# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3432

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Allen Isham

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 23, 2025
Filed: April 1, 2026

_____

Before SMITH, KELLY, and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

After a jury trial, Mark Isham was convicted of assaulting C.K., his intimate partner. Isham appeals the denial of his motion to suppress and the admission of contested evidence at trial pursuant to Rule 404(b). We affirm.

## I.

Isham and C.K. had an on-again, off-again relationship for several years and lived together at times. On March 13, 2023, C.K., an amputee, called Isham to pick her up from a treatment center. C.K. planned to stay with Isham for a few days before going to a halfway house. That night, they were drinking vodka and began to argue. As Isham continued to drink, he became verbally abusive and hit C.K. in the face and head.

Several days later, on March 19, 2023, Isham hit C.K. again. On March 24, 2023, C.K. called 911. She identified herself as "a vulnerable adult trapped against [her] will." She explained that she was in a wheelchair and told the operator that Isham had "beat [her] up about a week [or four days] ago." She said she had "a black eye and a split lip."

Officer Danielle Boettcher of the Bois Forte Police Department and Deputy Sean Norland of the St. Louis County Sheriff's Office arrived at Isham's home shortly after midnight. Boettcher knocked on the front door. Isham answered and said C.K. was not there. Boettcher then heard a female's voice—later identified as C.K.'s—ask "Who's at the door?" At that point, Isham acknowledged C.K. was inside, and the officers entered. C.K. was lying in bed without her prosthetic, and Isham took a seat in a chair next to the bed.

While Boettcher spoke with C.K., Norland asked Isham if they could talk outside. Isham said "sure," grabbed a coat, and stepped outside onto the front doorstep with Norland. When asked, Isham told Norland that C.K. was "welcome to stay" with him because she had no other place to go. Isham denied they had been arguing or that anything "physical" had happened between them, and suggested C.K. had called 911 because her cell phone was not working. After less than two minutes, they went back inside.

A few minutes later, Boettcher asked Isham to "come outside with [her]," and he said "sure." Boettcher and Isham stood on the front step, where Isham told her that he and C.K. got into an argument after drinking and he hit her. At that point, Boettcher told Isham she was going to detain him, and she walked him to her squad car, handcuffed him, and placed him in the backseat. C.K. was taken to the hospital by ambulance and later received surgery for a jaw fracture. Her jaw was wired shut for six weeks.

Isham was charged with: (1) assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3); (2) assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6); and (3) assault resulting in substantial bodily injury to a spouse or intimate partner, in violation of 18 U.S.C. § 113(a)(7). The district court[1] denied Isham's motion to suppress the statements he made to the officers before his arrest. The court granted in part the government's pretrial motion in limine seeking to admit evidence that Isham had assaulted C.K. on prior occasions. After a three-day trial, the jury found Isham not guilty on Count 1, and guilty on Counts 2 and 3. Isham appeals the denial of his motion to suppress and the admission of the prior assaults.

## II.

"When evaluating the denial of a motion to suppress, we review factual findings for clear error and legal questions *de novo*." United States v. Worthy, 129 F.4th 479, 484–85 (8th Cir. 2025) (citing United States v. Thomas, 97 F.4th 1139, 1142 (8th Cir. 2024)). Isham asserts he was interrogated without first having been advised of his rights under Miranda.[2] "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota.

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

custody.'" United States v. Ferguson, 970 F.3d 895, 901 (8th Cir. 2020) (quoting United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004)). On appeal, Isham challenges the district court's conclusion that he was not "in custody." We review this legal determination de novo. United States v. Treanton, 57 F.4th 638, 641 (8th Cir. 2023) (citing United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002)).

"In determining whether a defendant was in custody, the critical inquiry is 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Simpson, 44 F.4th 1093, 1096 (8th Cir. 2022) (quoting United States v. Williams, 760 F.3d 811, 814 (8th Cir. 2014)). "To resolve this inquiry, we consider the circumstances surrounding the questioning and whether, given those circumstances, a reasonable person would have felt free to terminate the questioning and leave." Ferguson, 970 F.3d at 901 (citation omitted). In doing so, we often assess the following non-exhaustive factors:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of questioning.

Id. (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)).

Here, two uniformed officers came to Isham's home. Isham spoke with each officer, and the conversations were brief—one lasted about one and a half minutes, and the other about three minutes. See Griffin, 922 F.2d at 1352 (finding length of questioning a factor in determining whether an individual was in custody). Neither officer used "strong arm tactics" or deception, displayed a firearm, or physically restrained Isham as they spoke. Id. at 1350 ("We have often looked upon the lack of

-4-

restraint on a suspect's freedom of movement during questioning . . . as a factor indicating absence of custody."). The officers initiated the questioning, but Isham verbally agreed to step outside with Norland and with Boettcher. Although neither officer told Isham that "questioning was voluntary," that he was free to ask the officers to leave, or that he was not under arrest, Isham showed no hesitation in answering their questions. See United States v. Hoeffener, 950 F.3d 1037, 1046 (8th Cir. 2020) (finding defendant acquiesced when he willingly entered the officer's car, responded to his questions, and the record did not show evidence of coercive tactics or a police-dominated environment). Under the circumstances, providing such warnings may have been preferable, but their absence alone does not render the interaction custodial. See Simpson, 44 F.4th at 1096 ("It was not necessary for the agent to state affirmatively that the questioning was voluntary and that Simpson was free to leave.").

Isham contends the atmosphere at his home was police dominated because the officers arrived after midnight, isolated him on the front step, and kept him "under constant guard." We agree that factors such as these are relevant to the custody determination. But considering them in context here, they do not render the setting custodial. Isham's home was small, and the officers' close proximity to Isham and C.K. was a consequence of spatial limitations, not police dominance. Isham agreed to step onto the front step with the officers and, despite the late hour, both Isham and C.K. were awake and watching television when the officers arrived. See Griffin, 922 F.2d at 1352 ("The question is whether the entire context of the questioning, including such considerations as place and length of the interrogation, demonstrates that the course of the investigation was police dominated.").

Boettcher arrested Isham after they spoke—a relevant factor in the analysis. But here, that factor does not weigh in favor of finding he was in custody at the time of the questioning. Isham was not restrained until after he told Boettcher he had assaulted C.K. That statement provided Boettcher with probable cause to arrest him. See Treanton, 57 F.4th at 642 ("[T]he agents here did not intend to arrest Treanton until they were directed to do so near the end of the interview, and the fact of a later

arrest does not establish that the preceding interview was custodial." (citation omitted)). Considering "the circumstances surrounding the questioning," we agree with the district court that Isham was not in custody when he spoke with the officers, and his motion to suppress was properly denied. Id. at 641 (quoting Ferguson, 970 F.3d at 901).

## III.

We review the district court's decision to admit C.K.'s testimony concerning prior assaults by Isham for abuse of discretion. United States v. Johnson, 860 F.3d 1133, 1139, 1142 (8th Cir. 2017). Rule 404(b) allows

> evidence of prior crimes to show a defendant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Admissible evidence "must be (1) relevant to a material issue raised at trial, (2) similar in kind and not overly remote in time to the crime charged, (3) supported by sufficient evidence to support a jury finding that the defendant committed the other act, and (4) of probative value not substantially outweighed by its prejudicial effect.

United States v. Jackson, 142 F.4th 1095, 1100 (8th Cir. 2025) (quoting United States v. Monds, 945 F.3d 1049, 1052 (8th Cir. 2019)); see Fed. R. Evid. 404(b)(2).

At trial, Isham placed his intent directly at issue by raising both self-defense and an intoxication defense.[3] See United States v. Steele, 550 F.3d 693, 701 (8th Cir. 2008) ("Evidence that rebuts a claim of self defense is admissible under Rule 404(b) if it shows an absence of mistake or accident." (citation omitted)). Isham testified that he was defending himself when he hit C.K. and that he had been sleeping and "didn't know it was her." He also said he was "still under the influence" at the time, as they both had been drinking that evening. Evidence of the prior incidents was thus

---

[3]The defense of intoxication was available on Count 1 only.

relevant to a material issue in dispute—Isham's general and specific intent.[4] The evidence at trial also showed that C.K. did not call 911 until at least four days after the assault, so evidence of the nature of C.K.'s relationship with Isham was relevant to provide the jury with a possible reason for the delay. See United States v. Plumman, 409 F.3d 919, 928 (8th Cir. 2005) (finding evidence of prior assaults provided an "explanation for the [victims'] failure to report the sexual abuse for almost two years").

The prior acts C.K. testified about were also sufficiently similar in kind to the charged offenses and not overly remote in time.[5] The incidents involved allegations of physical assaults by Isham against the same person: C.K. See United States v. Littlewind, 595 F.3d 876, 881 (8th Cir. 2010) ("[T]he past acts and the presently charged crimes involved intoxication and physical abuse of the same victim, making them quite similar and relatively more probative."). And all incidents had occurred since Isham's release from prison on a domestic assault conviction, also involving C.K., approximately eight years prior. See Johnson, 860 F.3d at 1142 ("As to temporal proximity, 'there is no fixed period within which the prior acts must have occurred.'" (citation omitted)).

Isham argues the prior incidents were too vague and unspecified to meet the standard for admissibility under Rule 404(b). When it granted the government's motion in limine, the district court recognized that the proffered evidence was lacking in details. But the court found that C.K.'s vague recollections could be a consequence of her years in a violent relationship with Isham, as well as her struggles with substance abuse, and these factors are relevant to admissibility. The district court also instructed the jury that it could consider the evidence of the prior assaults

---

[4]To prove Isham guilty on Count 1, the government was required to prove Isham acted with the specific intent to cause bodily harm. See 18 U.S.C. § 113(a)(3); see United States v. Two Eagle, 318 F.3d 785, 790–91 (8th Cir. 2003).

[5]The district court excluded other evidence of domestic violence between C.K. and Isham that was over ten years old.

only if it "unanimously [found] it is more likely true than not true that [Isham] committed the act." The district court further instructed the jury that the evidence, if proven, could be considered "only for certain limited purposes," and that it "may not convict [Isham] simply because [it] believe[s] he may have committed similar acts in the past." In sum, we discern no abuse of discretion in the district court's careful assessment of the disputed evidence's admissibility and limiting instruction to the jury.

## IV.

We affirm.

_____