# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1911

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of South Dakota.
Shana Schmidt,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

_____

Submitted: October 21, 2011
Filed: March 29, 2012

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and WEBBER,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

Shana Schmidt was found guilty of assault with a deadly weapon and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(3) and (6). The district court[2] ordered Schmidt to pay restitution to South Dakota's Medicaid program

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

and South Dakota's State Crime Victim Compensation program under the Mandatory Victim's Restitution Act (MVRA), 18 U.S.C § 3663A.  Schmidt appeals, arguing that the district court incorrectly determined that the MVRA applied and that the court failed to recognize its own discretion in deciding whether to award restitution.  We affirm.

I.

On the evening of July 10, 2009, Shana Schmidt, an enrolled member of the Rosebud Sioux Tribe, assaulted Brittany Shaw.  Both Schmidt and Shaw were attending a house party in the South Antelope community on the Rosebud Sioux Indian Reservation.  As Shaw and her friends were leaving the neighborhood in Shaw's vehicle, it was struck by a thrown object.  Shaw and one of her friends exited the vehicle, and a physical altercation ensued between Shaw's friend and the woman who threw the object.  As Shaw watched the fight, Schmidt approached her from behind, pulled her hair, and struck her in the face with a hard object.  The two women fought and were separated by onlookers.  Schmidt went to a nearby vehicle and retrieved a sharp, shiny object at least six inches long.  She then used this object to strike Shaw on her neck near the right collarbone, causing a laceration to Shaw's external jugular vein and damage to her inominate artery.  Shaw's injuries were life-threatening, and she underwent three different surgeries during a 21-day stay in the hospital.

Schmidt was charged with assault with a deadly weapon and assault resulting in serious bodily injury.  She pled not guilty.  After a three-day trial, the jury returned a verdict finding Schmidt guilty on both counts.  The court sentenced Schmidt to 51 months imprisonment on each count, to be served concurrently.  Shaw's medical care was covered by the State of South Dakota's Medicaid program, and she did not request restitution.  However, South Dakota requested restitution in the amount of $64,088.06 to its Medicaid program for the cost of treating Shaw's injuries, and

$193.50 to the State Crime Victim Compensation (SCVC) program as reimbursement for a payment made to Shaw for clothing.

At sentencing, Schmidt did not challenge the amount of restitution requested. Instead, Schmidt argued that the court should decline to award restitution before determining whether she possessed the ability to pay. Schmidt cited the Victim and Witness Protection Act of 1982 (VWPA), which states that the court shall consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate" when deciding whether to award restitution. 18 U.S.C. § 3663(a)(1)(B)(i)(II). However, the district court determined that this language was trumped by the provisions of the MVRA. The court found that the MVRA applied because Schmidt's offenses constituted "a crime of violence" under 18 U.S.C. § 3663A(c)(1) and noted that "restitution appears to be mandatory." Accordingly, the court awarded the requested amounts of restitution to the South Dakota agencies without considering Schmidt's indigence.

## II.

On appeal, Schmidt challenges the award of restitution, arguing that the district court erroneously applied the MVRA because South Dakota's Medicaid and SCVC programs are not "victims" for the purposes of the MVRA. Schmidt also argues that 18 U.S.C. § 3664, the statute that implements the provisions of the MVRA, does not remove a district court's discretion to decide whether to award restitution to a government entity that has compensated a victim of a crime of violence.

"We review a restitution order for abuse of discretion and the district court's application of the restitution statute de novo." United States v. Reichow, 416 F.3d 802, 804 (8th Cir. 2005). Because Schmidt challenges the district court's finding that it was required by the MVRA to award restitution to South Dakota's agencies, we

review that decision de novo.  See United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011).

A.

Under the MVRA, "when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense . . . ." 18 U.S.C. § 3663A(a)(1).  Subsection (c) includes any offense that is "a crime of violence."  18 U.S.C. § 3663A(c)(1)(A)(i).  Schmidt does not deny that her offense was a "crime of violence" as defined in 18 U.S.C. § 16.  Instead, she argues that direct restitution to South Dakota's agencies was not authorized by the MVRA because it was not paid "to the victim" of the offense.

The MRVA defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).  In her briefs, Schmidt argues that South Dakota's agencies are not victims under the MVRA because (1) government entities can never be victims under the MVRA, and (2) even if government entities can be victims, South Dakota's agencies were not directly and proximately harmed by Schmidt's offenses.  We reject Schmidt's contention that government entities can never be victims under the MVRA, see United States v. Senty-Haugen, 449 F.3d 862, 865 & n.3 (8th Cir. 2006) (citing numerous instances in which we have affirmed restitution orders to government agencies under the MVRA and ultimately holding "that the IRS is an eligible victim under the MVRA"), but we agree with Schmidt that South Dakota's agencies did not suffer direct or proximate harm in this case.  We have recognized that the expenditure of funds as compensation to a victim does not constitute direct or proximate harm. See Frazier, 651 F.3d at 905 (finding that the Red Cross and the Bureau of Indian Affairs were not victims under the MVRA because they merely provided compensation and "neither demonstrated it suffered a direct or proximate harm" from the defendant's arson).  Indeed, at oral argument, the Government conceded that South Dakota's agencies are not victims in this case.

-4-

B.

Even though we agree that South Dakota's agencies are not victims in this case, that is not the Government's primary theory as to why restitution was mandatory. Instead, the Government relies on 18 U.S.C. § 3664, which sets forth the procedures for implementing both the VWPA and the MVRA. In particular, section 3664(j)(1) states that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." The Government contends that South Dakota's agencies qualified as an "other source" of compensation for Shaw's losses and were thereby eligible for mandatory restitution.

As an initial matter, Schmidt argues that ordering restitution directly to South Dakota's agencies pursuant to section 3664(j)(1) conflicts with the MVRA's language that "the court shall order . . . that the defendant make restitution *to the victim* of such offense." 18 U.S.C. § 3663A(a)(1) (emphasis added). She insists that the district court should have therefore proceeded under the VWPA's discretionary restitution regime, which would have required consideration of Schmidt's indigence. However, the VWPA contains nearly identical language as the MVRA on this point, stating that "[t]he court . . . may order . . . that the defendant make restitution *to any victim* of the offense." 18 U.S.C. § 3663(a)(1)(A) (emphasis added). And section 3664(j)(1), which implements both the VWPA and the MVRA, expressly instructs the court to order a payment of restitution "to the person who provided . . . compensation" to a victim. We have noted that "[u]nder § 3664 of the Act, the court *must order* restitution be paid directly to an insurer if there was a 'victim' within the meaning of the MVRA and if the insurer compensated the victim for some or all of its loss." United States v. Mancini, 624 F.3d 879, 882 (8th Cir. 2010) (emphasis added). See also Frazier, 651 F.3d at 906 (recognizing that the MVRA requires payment to a third party if that party compensated the victim for all or part of its loss). Mancini demonstrates that we have interpreted section 3664(j)(1) and the MVRA as providing

for direct, mandatory restitution to a private insurer where a victim receives compensation for its losses from that insurer, and we therefore reject Schmidt's argument.

Here, Brittany Shaw is unquestionably a victim within the meaning of the MVRA. Thus the question is whether Shaw suffered a loss for which she was compensated by South Dakota's agencies, and if so, whether mandatory restitution is compelled when a government entity, rather than a private insurer, provides compensation to the victim. These are issues of first impression for our court.

To determine whether Shaw suffered a loss that was compensable when she did not pay any of her medical expenses out of pocket, we find guidance in United States v. Cliatt, 338 F.3d 1089 (9th Cir. 2003), where the Ninth Circuit addressed this issue in a factually similar context. In Cliatt, a United States Army servicewoman was stabbed and badly injured. Id. at 1090. She was treated at an army medical center, which provided its care free of charge because the victim was an active-duty member of the military. Id. The district court ordered the victim's assailant to pay restitution directly to the medical center under the MVRA. Id. On appeal, the Ninth Circuit first addressed whether the victim had suffered a loss, explaining that:

> As a benefit of her employment as a member of the armed services, [the victim] received medical care without incurring an obligation to pay for it. Her position is, however, essentially the same as that of any employed person who carries first-party medical insurance. If a person who has health insurance benefits is attacked and requires hospitalization, the fact that his insurance carrier pays the hospital directly could not mean that he suffers no "loss" and that his insurance company is not entitled to restitution under § 3664(j)(1). . . . The presence of insurance, then, does not detract from the fact that the victim suffered the loss, even if someone else paid for it financially, and even if that someone else is the United States.

Here, [the victim] suffered a "loss" equal to the amount of her medical and similar expenses. Her personal injuries generated the expenses. Functionally, under this statutory scheme, she thereby incurred those expenses as a loss and received compensation by way of the government's payments for her care.

Cliatt, 338 F.3d at 1093 (citation omitted).  The court also drew no distinction between a situation where a private insurer provides compensation and one where the government provides care, concluding that:

When the victim of a crime enumerated in the MVRA suffers bodily injury, and when the United States government covers her necessary medical expenses as a benefit of her military employment, 18 U.S.C. § 3663A requires that the defendant pay an amount equal to the cost of her care and 18 U.S.C. § 3664 requires that the restitution be paid directly to the government.

Cliatt, 338 F.3d at 1095.

We find the Ninth Circuit's analysis in Cliatt applicable to this case.  Shaw's injuries generated her medical bills and gave rise to a cognizable loss under the MVRA.  Because she suffered bodily injury, Shaw was entitled to receive "an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care" from Schmidt.  18 U.S.C. § 3663A(b)(2)(A).  And because South Dakota's agencies compensated Shaw for her loss by covering the necessary medical costs, section 3664(j)(1) allowed the court to bypass the inefficient "roundabout procedure" of ordering restitution to Shaw and having South Dakota recover it from her.[3]  Cliatt, 338 F.3d at 1093.

_____

[3]This interpretation of the relationship between the MVRA and section 3664(j)(1) recognizes that a victim who has already been compensated for her losses by a third party has little incentive to actively seek restitution from the defendant. And while section 3664(g)(1) permits a victim to refuse to participate in a restitution

Schmidt argues that a government entity cannot qualify as a "person" to whom payment must be made under section 3664(j)(1) because the definition of "person" in 1 U.S.C. § 1 does not expressly include sovereign states or government entities. This argument is indistinguishable from Schmidt's contention that government entities can never be victims under the MVRA, which is a proposition our court has consistently rejected. See Senty-Haugen, 449 F.3d at 865 & n.3. Again, we do not find this argument persuasive. A government agency may qualify as a "person" that provides compensation in the context of restitution. See United States v. Malpeso, 126 F.3d 92, 95 (2d Cir. 1997) (holding that the FBI qualified as a person who compensated the victim and was therefore entitled to restitution). Indeed, there is no practical distinction between a private insurer and the government when it acts as an insurer. Cliatt, 338 F.3d at 1093. See also United States v. Andrews, 600 F.3d 1167, 1173 (9th Cir. 2010) (finding Washington's Crime Victim's Compensation Program to be an eligible recipient of restitution under section 3664(j)(1)). Moreover, the language of section 3664(j)(1) discusses compensation from "insurance or any other source," thus indicating that the nature of the entity providing compensation is irrelevant to a determination of whether restitution should be paid. This interpretation is also consistent with our recognition that the goal of the MVRA and its implementing legislation was "'to expand, rather than limit, the restitution remedy.'" Senty-Haugen, 449 F.3d at 865 (quoting United States v. Ekanem, 383 F.3d 40, 44 (2d Cir. 2004)).

We conclude that the district court did not err in ordering mandatory restitution to the South Dakota Medicaid and SCVC programs. Shaw was a victim of a crime

---

award, there is no evidence in the record that Shaw expressly disclaimed participation in the restitution award. Schmidt's reliance on United States v. Speakman, 594 F.3d 1165, 1168-69 (10th Cir. 2010), in which the victim never received compensation for her losses from a third party and made it abundantly clear that she did not want restitution from the defendant, is therefore unavailing.

covered by the MVRA; Shaw suffered a loss in the form of expensive medical treatment; and Shaw received compensation for her loss from third parties. Under the MVRA and section 3664(j)(1), the court was required to award restitution directly to those third parties in an amount equal to the amount of compensation and not exceeding the total amount of the victim's loss. The fact that the third parties were agencies of South Dakota does not change the analysis.

III.

We affirm the district court's order of restitution.

_____