# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2391

_____

United States of America

*Plaintiff - Appellee*

v.

Deuvontay Shelby Charles

*Defendant - Appellant*

_____

No. 17-3094

_____

United States of America

*Plaintiff - Appellee*

v.

Deuvontay Shelby Charles

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

_____

Before GRUENDER, MURPHY, and KELLY, Circuit Judges.[*]

_____

KELLY, Circuit Judge.

A jury convicted Deuvontay Charles of two counts of sex trafficking by use of force, threat, fraud, or coercion; three counts of sex trafficking of a minor; twelve counts of producing child pornography of minors; two counts of receiving child pornography; and one count of commission of a felony offense involving a minor while required to register as a sex offender.

The district court sentenced Charles to 432 months in prison and 20 years of supervised release; it also ordered restitution. Charles appeals, arguing that (1) the district court erred in denying his motion to suppress evidence from his cell phones; (2) the evidence was insufficient for the jury to find him guilty of committing a felony offense involving a minor while required to register as a sex offender; and (3) the district court's award of restitution was improper. We affirm Charles's convictions and the order of restitution to K.M.L., but vacate the order of restitution to Anoka County.

I.

In the summer of 2015, the mother of victim K.M.L. contacted the Anoka County police department because she was concerned that Charles was recruiting her daughter to engage in prostitution. K.M.L.'s mother showed Detective Michael

_____

[*]This opinion is being filed by Judge Gruender and Judge Kelly pursuant to 8th Cir. Rule 47E.

Schantzen Facebook messages between Charles and K.M.L. in which Charles asked her to work for him, told her to call him "daddy," and promised her she would be able to make a lot of money. After obtaining a warrant, Schantzen gained access to records from Charles's Facebook account. These records revealed that Charles was recruiting or had recruited other juvenile girls for sex trafficking. He had also induced girls to produce sexually-explicit images and videos to send to him.

Despite the fact that Charles was required to register on the Minnesota Predatory Offender Registry (MPOR) due to a 2014 Minnesota conviction for soliciting a child to engage in sexual conduct, it was not immediately clear to Schantzen where Charles lived. The Minnesota Bureau of Criminal Apprehension MPOR website listed two addresses for Charles—one in Minnesota, which Schantzen determined did not physically exist, the other in Dickinson, North Dakota. Schantzen learned from the Dickinson Police Department that Charles had not been to the North Dakota address in two months.

Charles's Facebook records, however, made 15 references to an address on Thomas Avenue North in Minneapolis. Charles mentioned on Facebook that he was staying with his grandma and sister at the Thomas Avenue address. Schantzen confirmed that a male and a female with the last name of Charles lived at the Thomas Avenue address and that both were old enough to potentially be Charles's grandparents. Schantzen also reviewed the IP logs associated with Charles's Facebook account, obtained records on Charles's cell site information from Verizon, and conducted surveillance of the Thomas Avenue address. Based on this investigation, Schantzen obtained a warrant to search the Thomas Avenue address.

The police executed the search warrant on September 1, 2015. They arrested Charles and seized and searched three of his cell phones. Two of the phones contained child pornography videos and images of the victims. Prior to trial, Charles

moved to suppress evidence seized from these cell phones. After a hearing at which Schantzen testified, the district court denied the motion.

At the close of the government's evidence at trial, Charles moved for judgment of acquittal under Rule 29, stating specifically that there was insufficient evidence for a jury to convict him of the sex trafficking and production and receipt of child pornography charges. The district court denied his motion. A jury convicted Charles on the charges listed above.[1]

Prior to sentencing, K.M.L. and her mother submitted a declaration of victim losses and a victim impact statement to the probation office. K.M.L. requested $2,919 in restitution for (1) payments for K.M.L.'s cell phone, which was taken and used as evidence; (2) K.M.L.'s mother's mileage to visit K.M.L. while she was hospitalized or in treatment; and (3) the cost of K.M.L.'s residential treatment that K.M.L's mother was responsible for paying. As proof of the residential treatment costs, K.M.L. submitted a Statement of Claim and Summons from Anoka County indicating that the total cost of K.M.L.'s treatment was $29,420 and that Anoka County had sued K.M.L.'s mother for $2,244 of the treatment costs. Anoka County did not submit a separate request for restitution. The district court heard argument about restitution at sentencing, but deferred making an order of restitution in order to allow the parties to submit additional briefing. The court then sentenced Charles to 432 months in prison and 20 years of supervised release. After the parties submitted additional briefing, the district court entered a restitution order of $675 to K.M.L for the cell phone and transportation costs and $29,420 to Anoka County for the full cost of K.M.L's residential treatment.

---

[1]The jury acquitted Charles on three counts of sex trafficking.

II.

Charles first argues that the district court erred in denying his motion to suppress evidence and abused its discretion in denying his request for a Franks hearing. Specifically, he contends that Schantzen's search warrant affidavit omitted facts that made the affidavit misleading, and that, if the omitted information was included in the affidavit, it could not support a finding of probable cause. He also argues that the warrant did not authorize the search of his cell phones. We review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Douglas, 744 F.3d 1065, 1068 (8th Cir. 2014). We review a district court's denial of a Franks hearing for abuse of discretion. United States v. Snyder, 511 F.3d 813, 816 (8th Cir. 2008).

A defendant may challenge a facially valid affidavit for a search warrant if it contains deliberate or reckless misrepresentations. Franks v. Delaware, 438 U.S. 154, 155–56 (1978); United States v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996). The Franks rule also allows a defendant to challenge affidavits based on alleged deliberate omissions. United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986).

> To obtain a Franks hearing a defendant must make a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable cause . . . . Thus, to prevail on a Franks claim the defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his warrant affidavit.

Snyder, 511 F.3d at 816 (citations omitted).

Charles maintains that the affidavit supporting the warrant contained material misleading omissions. He argues that the affidavit gave the misleading impression

-5-

that he lived at the Thomas Avenue residence and that, if the affidavit had included certain omitted facts, a neutral magistrate could not have concluded that he stayed at the Thomas Avenue address more than occasionally. But even with more information about Charles's connections to other residences and more context for the facts that were asserted in the affidavit, a neutral magistrate could conclude that Charles sometimes stayed at the Thomas Avenue residence, had stayed there recently, and there was probable cause that the police would find him or the anticipated evidence at that address. Therefore, the district court did not abuse its discretion in denying Charles's motion for a <u>Franks</u> hearing before denying his motion to suppress. And the warrant also clearly authorized the officers to perform a forensic search of the cell phones. We thus conclude that the district court did not err in denying his motion to suppress.

III.

Charles also argues that his conviction for committing a felony offense involving a minor while required to register as a sex offender, in violation of 18 U.S.C. § 2260A, is not supported by sufficient evidence. Section 2260A provides that "[w]hoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under [enumerated provisions, including 18 U.S.C. §§ 1591 and 2251], shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision." Charles claims the government failed to prove that he was required to register as a sex offender when he committed the 2015 felonies.

Charles made a general Rule 29 motion at the close of the government's evidence. When the district court asked him on what basis he was making his motion, Charles answered: insufficient evidence for the sex trafficking and production and receipt of child pornography charges. He did not include § 2260A as another ground upon which his motion would lie. Nevertheless, to the extent Charles raises a factual

issue, there was sufficient evidence in the record for a jury to find that he was required to register as a sex offender when he committed the 2015 felonies. In particular, there is no dispute that Charles was required to register on the MPOR, and a probation officer testified at trial that the MPOR is no different than a sex offender registry. Thus, Charles has not shown that no reasonable jury could find the elements of § 2260A beyond a reasonable doubt. See United States v. Samuels, 874 F.3d 1032, 1034–36 (8th Cir. 2017) (standards of review). And, to the extent Charles seeks to frame his argument as a legal issue, he did not raise it as a legal issue to the district court. "At most, we review such forfeited issues for plain error." Id. at 1036 (noting that if a defendant includes "specific grounds in a Rule 29 motion, grounds that are not specifically raised are waived on appeal" (quoting United States v. Chong Lam, 677 F.3d 190, 200 (4th Cir. 2012)). And it is not clear that the MPOR does not qualify as a sex offender registry for purposes of § 2260A as a matter of law. Thus, the district court did not plainly err by not sua sponte acquitting Charles on the § 2260A count. Therefore, we uphold Charles's conviction under § 2260A.

IV.

Finally, Charles argues that the government provided insufficient evidence to support the district court's restitution order. He claims there was no evidence that his conduct proximately caused K.M.L.'s injury or that the payment to Anoka County was warranted. "We review the district court's decision to award restitution for abuse of discretion, but any fact findings as to the amount are reviewed for clear error." United States v. Carpenter, 841 F.3d 1057, 1060 (8th Cir. 2016).

Under the Victims of Trafficking and Violence Protection Act of 2000, as amended, 18 U.S.C. § 1593, and the Mandatory Victims Restitution Act of 1996 (MVRA), as amended, 18 U.S.C. §§ 3663A, 3664, the district court shall order a defendant convicted of sex trafficking of children, as set forth in 18 U.S.C. § 1591, to pay restitution to the victim. A defendant must pay the "full amount of the victim's

losses," which includes—as relevant here—"medical services relating to physical, psychiatric, or psychological care," "necessary transportation . . . expenses," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. §§ 1593(b)(1), (b)(3), 2259(b)(3). "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." United States v. Hoskins, 876 F.3d 942, 945 (8th Cir. 2017).

Contrary to Charles's claim, there was sufficient evidence that his conduct caused K.M.L.'s injury. The government relied on evidence presented at trial to prove that an award of restitution to K.M.L. was appropriate.[2] K.M.L. and her mother stated at trial that, as part of Schantzen's investigation, K.M.L. gave her cell phone to the police as evidence. Testimony at trial also revealed that, after messaging Charles on Facebook, K.M.L. was hospitalized and spent time at an inpatient juvenile center. A forensic pediatrician testified about how important it is to provide appropriate mental health support for sex trafficking victims, including in cases where the victimization occurs only online. Charles did not challenge the dollar amount of K.M.L.'s request for the mileage or cell phone service; he disputed only the causal relationship between his crimes and her treatment. The district court did not abuse its discretion in ordering restitution to K.M.L. and her mother.

As to Anoka County's award for K.M.L.'s residential treatment, restitution orders to third parties, including government entities, are allowed under the MVRA.

---

[2]In its argument that we should uphold the order of restitution, the government has referred to documents that K.M.L. submitted to the probation office, including the Statement of Claim and Summons. Charles has moved to strike these documents from the government's appendix because they were not offered into evidence in the district court. We assume, arguendo, that the documents are not before us, but we would reach the same conclusion here even if we were to consider them. Because the documents do not influence the result with respect to K.M.L. or Anoka County, we deny Charles's motion to strike them as moot.

18 U.S.C. § 3664(j)(1); United States v. Schmidt, 675 F.3d 1164, 1169 (8th Cir. 2012). But the government presented no evidence at trial that Anoka County paid for K.M.L.'s residential treatment. And even if we were to rely on the Statement of Claim and Summons submitted by K.M.L.'s mother, it is not a receipt or invoice for K.M.L.'s treatment—it is a conciliation court document from Anoka County's lawsuit against her mother, which seeks only a portion of the total cost of treatment. On its face, the document does not prove by a preponderance of the evidence that Anoka County paid $29,420 for K.M.L.'s treatment, in full or without reimbursement. And its mention of "RSDI"[3] could indicate that the Social Security Administration would pay, or has paid, for some of K.M.L.'s treatment costs. See United States v. Searing, 250 F.3d 665, 668 (8th Cir. 2001) (noting that "victims are entitled to recover for their losses regardless of their insurance coverage" and third parties "are entitled to recover for the amounts paid on claims" (citations omitted)). Without any other documentation or explanation from Anoka County, we cannot conclude that the government proved this amount of restitution by a preponderance of the evidence. Cf. Schmidt, 675 F.3d at 1168–69 (upholding a restitution award to a state's Medicaid program where the state submitted its request for restitution). We therefore conclude that the district court abused its discretion in ordering restitution to the county. The restitution order for Anoka County is vacated.

V.

For the foregoing reasons, we affirm Charles's convictions and the restitution award to K.M.L. and her mother. We vacate the restitution award to Anoka County. Charles's motion to strike is denied as moot.

_____

---

[3]It appears this a reference to the Social Security Administration's Retirement, Survivors, and Disability Insurance program.