# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2958

_____

United States of America,

*Plaintiff - Appellee,*

v.

Antonio Alonzo Outlaw, also known as Mike,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 26, 2019
Filed: January 8, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Antonio Alonzo Outlaw was convicted by a jury of conspiracy to distribute heroin and aiding and abetting the distribution of heroin. He also pleaded guilty to two counts of distributing heroin. The district court[1] sentenced him within the

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

advisory guideline range to 365 months' imprisonment. On appeal, Outlaw challenges the sufficiency of the evidence to support the jury verdicts, and he asserts error by the district court at sentencing. We affirm.

I.

The prosecution's theory of the case was that Outlaw engaged in heroin trafficking with a group of drug dealers who identified themselves as "We the Best." Outlaw admitted guilt on two counts of distribution that were based on controlled transactions with a person cooperating with law enforcement. To prove the conspiracy count, the government called numerous witnesses who testified that they acquired heroin from Outlaw or persons associated with him between 2013 and January 2017. The aiding and abetting charge was based on a controlled transaction on December 10, 2014. A cooperator testified that he met with Outlaw and an associate nicknamed "Black," and received fifteen bags of heroin—five from Outlaw and ten from "Black." The associate "Black," however, testified that while Outlaw drove the two men to the drug transaction, only "Black" distributed heroin to the cooperator on that occasion.

Outlaw contends on appeal that there was insufficient evidence to support his convictions by the jury. On claims of insufficient evidence, we affirm a conviction if, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. El Herman*, 583 F.3d 576, 579 (8th Cir. 2009); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The conspiracy charge required the government to prove three elements: (1) that there was an agreement to distribute heroin, (2) that Outlaw voluntarily and intentionally joined the conspiracy, and (3) that Outlaw knew the purpose of the conspiracy when he joined. *United States v. Hickman*, 764 F.3d 918, 924 (8th Cir.

2014). "An agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case." *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014) (internal quotation omitted).

In the course of proving a conspiracy to distribute heroin, the government presented overwhelming evidence that Outlaw distributed heroin during the relevant period. Outlaw pleaded guilty to two counts of distribution, and the government presented evidence of these controlled transactions. More than a dozen separate witnesses testified that Outlaw distributed heroin to them on occasions totaling in the hundreds during the time of the charged conspiracy.

There was ample evidence to show that Outlaw knowingly and intentionally joined a conspiracy to distribute heroin. Several witnesses testified that after they obtained a telephone number at which to contact Outlaw to purchase heroin, they called the number to place an order for drugs. The witnesses testified that different persons answered their calls: sometimes it was Outlaw, and sometimes it was one of several other persons. According to the testimony, sometimes Outlaw arranged a transaction on the telephone, but a "runner" would deliver the drugs to the buyer. Other times, Outlaw answered the call and delivered the drugs himself; in another scenario, a third person would answer the phone and deliver the drugs. Some witnesses also testified that they communicated with Outlaw's telephone by text message to arrange heroin purchases. Return text messages from Outlaw's phone number typically included the "We the Best" group moniker at the end.

Taking the evidence as a whole, a reasonable jury could infer that Outlaw distributed heroin as part of a conspiracy with other persons involved with the "We the Best" group. Outlaw attacks the credibility of several prosecution witnesses who admitted to drug use or cooperation agreements with the government. Credibility, however, is almost exclusively matter for the jury, and the sheer number of witnesses

who testified to a similar pattern of activity with Outlaw gave the jury sound reason to believe that Outlaw was a member of the charged conspiracy.

The aiding and abetting conviction arose from Outlaw's involvement in a controlled drug transaction on December 10, 2014. The government had the burden to prove that Outlaw "took an affirmative act to further the underlying criminal offense, with the intent of facilitating the offense." *United States v. Borders*, 829 F.3d 558, 565 (8th Cir. 2016). The intent element required proof that Outlaw had advance knowledge of all the characteristics of the transaction that made it illegal—"knowledge that enable[d] him to make the relevant legal (and indeed, moral) choice" to facilitate the offense. *Rosemond v. United States*, 572 U.S. 65, 78 (2014).

The prosecution's evidence established that Outlaw drove to the site of the drug transaction with an associate nicknamed "Black" as a passenger. The cooperating person testified that Outlaw and "Black" transferred heroin to him. "Black" admitted distributing heroin, but denied that Outlaw did so. Whether or not the jury was convinced that Outlaw personally transferred heroin on this occasion, the jury reasonably could have inferred that Outlaw knew in advance that he was driving to a drug transaction, and did so intentionally to facilitate his associate's transfer of heroin. In addition to the evidence about this particular transaction, the jury also heard other testimony that Outlaw and "Black" worked together in trafficking heroin. Evidence of the larger conspiracy reinforced the inference that Outlaw was not an unwitting driver on December 10, but that he knowingly and intentionally participated in the charged transaction.

For these reasons, there was sufficient evidence to support the convictions. The district court properly denied Outlaw's motion for a judgment of acquittal.

II.

Outlaw raises several claims of procedural error in the district court's calculation of the advisory guideline range at sentencing. We review the district court's interpretation of the guidelines *de novo* and its factual findings for clear error. *United States v. Sesay*, 937 F.3d 1146, 1153 (8th Cir. 2019).

Outlaw first argues that the district court erred by applying a four-level increase for an aggravating role in the offense. That adjustment applies where a defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). The district court found that Outlaw oversaw a number of runners in the heroin distribution conspiracy, and that the criminal activity involved five or more participants.

We conclude that the district court's determinations were supported by sufficient evidence. In deciding whether a defendant played an aggravating role, the court should consider "the exercise of decision making authority . . . and the degree of control and authority exercised over others." USSG § 3B1.1, comment. (n.4). Several witnesses testified that Outlaw exercised control over "runners" whom he dispatched to deliver heroin. This sort of control and authority, exerted with respect to several persons over a period of years, sufficed to establish Outlaw as an organizer or leader. *See United States v. Rodriguez*, 112 F.3d 374, 377 (8th Cir. 1997). The record also supports the finding of five or more participants. Two associates, nicknamed "Black" and "Little Man," were prominent in the testimony, and witnesses identified at least two more people who participated in the conspiracy. One witness testified that she knew of three individuals other than Outlaw who were members of "We the Best," and that she herself had assisted the group on one occasion. Another witness said that when he called the number associated with "We the Best" to order drugs, four or five people other than Outlaw answered the phone and facilitated transactions. There was no clear error in applying the four-level increase.

-5-

Outlaw next disputes a two-level increase for obstruction of justice under USSG § 3C1.1. The guideline commentary provides that "escaping or attempting to escape from custody before trial or sentencing" is the type of conduct to which the guideline applies. USSG § 3C1.1, comment. (n.4(E)). The district court found that Outlaw was a co-conspirator with another inmate in an effort to escape from a county jail while he was detained pending trial. The court concluded that Outlaw "may not have been the brains of the outfit, but he was definitely conducting overt acts in furtherance of the conspiracy to do a jailbreak."

There was sufficient evidence to support the court's finding. A jail administrator testified that he received a report from an inmate that Outlaw and another prisoner named Valencia were planning an escape from the jail. The inmate testified that Valencia told him of a plan for Valencia's associates to drill a hole through the window of Outlaw's cell from the outside and hand Outlaw a saw blade that he or Valencia could use to cut through bricks and escape. At around this time, jailers found physical evidence that someone had applied a blowtorch and acid to the window of Outlaw's cell. Jailers then moved Outlaw to the second floor of the jail, but Valencia offered marijuana to an inmate on the ground floor in exchange for allowing Outlaw to move into his cell. Outlaw also requested to move back to the ground floor based on supposed "medical issues." The prosecution introduced recorded jailhouse telephone calls between Valencia and outside parties in which they discussed tools and other matters; these communications supported a reasonable inference that Valencia was planning an escape. The government also presented evidence that Outlaw arranged for a female associate to place money in a jail telephone account for Valencia so that he could plan the escape. There was no clear error in the court's finding that Outlaw participated in a conspiracy to escape from the jail.

Outlaw's final argument is that the district court should have granted a downward variance from the advisory guideline range of 292 to 365 months to the

statutory minimum term of 240 months. He cites a difficult upbringing, during which his parents abused drugs and engaged in criminal activity, and he suggests that his criminal history was overstated because a number of convictions were sustained twenty years before the sentencing in this case. The district court reasonably concluded, however, that there was no basis for a downward variance. The court observed that despite turmoil in Outlaw's youth, he had a good grandmother and aunts who supported him, and he was not "out on the street." The court found that the aggravating factors far outweighed the mitigating factors, and that a sentence within the recommended range was appropriate. We presume that a term within the advisory range is reasonable, and the court did not abuse its discretion by following the guidelines here.

\* \* \*

The judgment of the district court is affirmed.

_____