# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1192

_____

United States of America

*Plaintiff - Appellee*

v.

Roland Hoeffener

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 10, 2019
Filed: February 24, 2020

_____

Before ERICKSON, ARNOLD, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Roland Hoeffener ("Hoeffener") conditionally pled guilty to one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1), and two counts of possession of child pornography, in violation of 18

U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). The district court[1] sentenced Hoeffener to concurrent terms of 120 months' imprisonment on each count. Hoeffener appeals the court's denial of his motion to compel, motions to suppress, and request for a Franks hearing. He also challenges the sentence, claiming the district court erred when it failed to give appropriate weight to his age and prior sex offender treatment. We affirm.

I.     **Background**

On December 15, 2012, Detective Bobby Baine of the St. Louis Metropolitan Police Department was conducting a child pornography "Internet undercover operation" using a software program called Torrential Downpour. Torrential Downpour is a law enforcement software program configured to search the BitTorrent network for Internet Protocol ("IP") addresses associated with individuals offering to share or possess files known to law enforcement to contain images or videos of child pornography. Detective Robert Erdely, an investigator for the Indiana County, Pennsylvania District Attorney's Office, testified that the program logs the date, time, and infohash of the activity occurring during the investigation; the path and file name investigated; and the investigated computer's IP address, port identifier, and BitTorrent software. Detectives Baine and Erdely both testified that Torrential Downpour cannot access non-public areas or unshared portions of an investigated computer, nor can it override settings on a suspect's computer.

The software program connected to an IP address in the St. Louis area that had within its files videos or images suspected of containing child pornography. The program downloaded those files from the IP address. When Detective Baine checked

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

his computer log, he reviewed the images that had been downloaded onto his system and identified two of the files as containing child pornography.

Through a subpoena, Detective Baine determined that the IP address for the investigated computer belonged to Hoeffener. Detective Baine forwarded this information to Detective Dustin Partney, who worked in the Special Investigations Unit for the St. Louis County Police Department. In his search warrant affidavit, Detective Partney outlined the undercover operation, how law enforcement officers identified Hoeffener's computer, and described the two images containing child pornography that were downloaded by the Torrential Downpour program:

1.  FILE NAME: spread.em.chan12\125943702341
    DESCRIPTION: An image file depicting a prepubescent female lying on her right side. The female is pulling her panties to the side, exposing the side of her vagina and anus.

2.  FILE NAME: spread.em.chan12\1125946249912
    DESCRIPTION: An image file depicting a minor female lying on her back with her legs spread, exposing the pubic area and making the focal point of the image her vagina.

Detective Partney averred that he had reviewed these two files, found them to contain the described images/movie files, and based on his training and experience, determined that Hoeffener had possessed and distributed child pornography.

On April 29, 2013, a circuit judge issued a search warrant for Hoeffener's residence, permitting officers to search his home as well as electronic data processing and storage devices, computers, computer systems, and other related items for photographs, files, and images depicting sexual contact or sexual performance of a child under the age of 18. The warrant was executed the next day. Multiple computers, hard drives, thumb drives, SIM cards, CDs, digital cameras, and tablet PCs were seized. A forensic examination revealed the uTorrent and eMule file-

sharing applications had been installed on Hoeffener's computer and that there were approximately 7,365 image files and 460 video files of child pornography.

St. Louis Police Department Sergeant Adam Kavanaugh assisted other officers in executing the search warrant. While the warrant was being executed by other officers, Sergeant Kavanaugh asked Hoeffener to sit in his vehicle and talk to him about the reason for the search warrant. Hoeffener voluntarily sat in the front seat of Sergeant Kavanaugh's unmarked vehicle. Hoeffener was not handcuffed or otherwise restrained. Sergeant Kavanaugh recorded his conversation with Hoeffener. Sergeant Kavanaugh described Hoeffener as inquisitive, but polite and cooperative. At no point did Hoeffener request to leave the vehicle. When the conversation began, Hoeffener was not placed under arrest and Sergeant Kavanaugh did not consider him in custody. After talking for approximately five minutes, Hoeffener confessed to Sergeant Kavanaugh that he had used uTorrent to download and view pictures and movies of child pornography involving children as young as five years old. At no time did Sergeant Kavanaugh read Hoeffener his Miranda rights.

After Hoeffener admitted to downloading child pornography, Sergeant Kavanaugh did not place Hoeffener under arrest or otherwise restrain Hoeffener, but had determined Hoeffener would not be free to leave. Near the conclusion of the in-vehicle conversation, when Sergeant Kavanaugh asked Hoeffener if there had ever been accusations that he touched a child, Hoeffener acknowledged an accusation involving a neighbor child, but denied touching any child. Sergeant Kavanaugh then asked Hoeffener if he would agree to a polygraph test. Hoeffener responded, "No problem." Sergeant Kavanaugh drove Hoeffener to the St. Louis Police Department and while en route, Hoeffener asked if he was going to be arrested. Sergeant Kavanaugh responded, "Well, probably." Hoeffener replied, "Okay."

Before administering the polygraph test, Hoeffener was read his Miranda rights. After those rights were read and before the polygraph questioning began,

Hoeffener stated, among other things, that he had downloaded approximately 10,000 images and/or movies of child pornography. During the actual polygraph test, Hoeffener was asked whether he had any "undisclosed sexual contact with a minor." The results of the polygraph were inconclusive.

After the polygraph test, Sergeant Kavanaugh videotaped an interview with Hoeffener regarding their in-vehicle conversation. Hoeffener agreed that Sergeant Kavanaugh had not handcuffed him, had not threatened him, and that he had voluntarily agreed to go to the police station. Hoeffener reiterated that he had used uTorrent to download child pornography. When Hoeffener was asked about possessing between 10,000 and 20,000 pictures or videos of child pornography, Hoeffener acknowledged that he had child pornography on his computer, but not "that much."

Hoeffener's defense had two basic prongs, which were set out in his numerous pretrial motions: (1) gather in-depth discovery related to the use of Torrential Downpour in an attempt to obtain evidence to support a claim that the program operated in a way that violated his Fourth Amendment rights and to determine how the program functioned at the time of the investigation and whether any changes or enhancements had been made to it; and (2) seek to suppress all evidence obtained by law enforcement and all statements made by Hoeffener during the investigation. After the court rejected each one of Hoeffener's motions, he conditionally pled guilty, reserving the right to appeal the court's adverse rulings on his motion to compel, motion to suppress statements, motion to suppress evidence, and request for a Franks hearing. Hoeffener also appeals his sentence, contending the district court should have given more consideration to his age and sex offender treatment history because a 120-month sentence for him, at 70 years old, might equate to a life sentence.

## II.    Discussion

### A.    Pretrial Motions

After receiving four extensions of time to file pretrial motions from the court, Hoeffener filed a motion to compel, a motion to suppress statements, and a motion to suppress evidence and request for a <u>Franks</u> hearing on the same day. The court[2] held evidentiary hearings on Hoeffener's motions. Following the hearings, the magistrate judge denied Hoeffener's motion to compel discovery, denied Hoeffener's request for a <u>Franks</u> hearing, and recommended denial of Hoeffener's motions to suppress. The district court adopted the magistrate judge's findings and analyses and denied both motions to suppress. For the reasons that follow, we affirm the denial of Hoeffener's motions.

#### 1.    Motion to Compel Discovery

Hoeffener moved to compel the government to produce the source code, manuals, and software for Torrential Downpour. The magistrate judge determined that Hoeffener had failed to make a threshold showing of materiality and, in addition, the requested information was protected by the law enforcement privilege. On appeal, Hoeffener asserts an entitlement to the requested information for two reasons: (1) so his expert from Loehrs Forensics, LLC can investigate the program's reliability, and (2) to prepare for cross-examination of the government's witnesses.

With regard to the software program, the government disclosed the following information to Hoeffener: (1) a printout of a Powerpoint presentation about the installation and use of uTorrent version 2.2.1 (the file-sharing software used by

---

[2]The Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri.

Hoeffener at the time of the online investigation); (2) a compact disc depicting a simulation of how law enforcement personnel use the software program; (3) the log of activity occurring during the online investigation of Hoeffener's computer, along with testimony explaining these materials from a detective who helped create and train law enforcement personnel on the use of the software program; (4) the length of time the program had been used by the St. Louis Metropolitan Police Department; and (5) a list of the program's authorized users.[3]

When determining whether to order disclosure of information, "one of the most relevant factors to be weighed by the court . . . is whether or not the evidence is *material* to the accused defense." United States v. Grisham, 748 F.2d 460, 463 (8th Cir. 1984) (quoting United States v. Barnes, 486 F.2d 776, 778 (8th Cir. 1973) (emphasis in original)). Materiality must be shown by more than mere speculation or conjecture. Id. at 463–64. A district court has "broad discretion with respect to discovery motions, and we will uphold the decision of the district court unless, considering all the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness at trial." United States v. Hintzman, 806 F.2d 840, 846 (8th Cir. 1986) (quotation and citations omitted). We find no such abuse in this case.

The government disclosed information that allowed Hoeffener's expert to investigate how the file sharing software Hoeffener was using functioned, how Torrential Downpour functioned, and the activity log gathered from Hoeffener's computer. In addition to this information Hoeffener sought the source code, essentially the program itself, and manuals related to the program. Hoeffener's

---

[3]In addition, a year ago, the district court in Arizona ordered the government to give the defendant in that case access to the Torrential Downpour program. The defendant in that case had also retained Loehrs Forensics, LLC as his expert. United States v. Gonzales, 2:17-cr-01311-001-PHX-DGC (D. Ariz. Feb. 19, 2019) (Doc. #51).

reasoning for seeking this information revealed nothing more than a fishing expedition to discover how law enforcement's proprietary software is able to identify potential possessors and distributors of child pornography over the BitTorrent peer-to-peer sharing network. Hoeffener's mere speculation that the software program could possibly access non-public areas of his computer or that there was a possibility that it malfunctioned during the officers' investigation into Hoeffener's sharing of child pornography is insufficient to meet the requisite threshold showing of materiality to his defense. We find no abuse of discretion in the denial of Hoeffener's motion to compel, let alone a gross abuse of discretion that would result in fundamental unfairness.

## 2. *Motion to Suppress Evidence*

On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo.* United States v. Green, 946 F.3d 433, 438 (8th Cir. 2019). We will affirm the district court's decision "unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." Id. (quoting United States v. Collins, 883 F.3d 1029, 1031 (8th Cir. 2018)).

Hoeffener moved to suppress evidence law enforcement officers obtained while using the Torrential Downpour software program on the ground that he had a legitimate expectation of privacy in the use of his computer and the warrantless search occurring while Hoeffener was not actively sharing data with others violated the Fourth Amendment. The crux of Hoeffener's argument is that because BitTorrent is a software that intentionally obscures the transmitted communication by encrypting the information and decentralizing the delivery system, his enhanced efforts to protect the privacy of the communications creates a reasonable expectation of privacy that might not exist with other file sharing programs. We find his argument unavailing.

The record reflects that Torrential Downpour searches for download candidates in the same way that any public user of the BitTorrent network searches, and it only searches for information that a user had already made public by the use of the uTorrent software. A defendant has no legitimate expectation of privacy in files made available to the public through peer-to-peer file-sharing networks. United States v. Hill, 750 F.3d 982, 986 (8th Cir. 2014); (case involving the file-sharing software LimeWire); United States v. Stults, 575 F.3d 834, 842 (8th Cir. 2009) (same); United States v. Maurek, 131 F.Supp.3d 1258, 1263 (W.D. Okla. 2015) (case involving BitTorrent software); United States v. Hall, Case No. 2:15-cr-7-FtM-29CM, 2015 WL 5897519, at *1 (M.D. Fla. October 7, 2015) (same). Hoeffener's attempt to distinguish BitTorrent software from other peer-to-peer programs does not alter the fact that he allowed public access to the files on his computer. The district court did not err in denying his motion to suppress evidence.[4]

### 3.    Request for a <u>Franks</u> Hearing

We review the denial of a Franks hearing for abuse of discretion. United States v. Charles, 895 F.3d 560, 564 (8th Cir. 2018) (citing United States v. Snyder, 511 F.3d 813, 816 (8th Cir. 2008)). In order to be entitled to a Franks hearing, we have summarized the requisite showing as follows:

> To obtain a Franks hearing a defendant must make a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable

---

[4]Hoeffener's other asserted avenue of relief was a claim that Congress has recognized a legitimate expectation of a privacy interest in electronic communications via passage of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510–22, which he asserts law enforcement violated through its use of Torrential Downpour. His argument is unsupported by any citation to legal authority and we find no support for his claim in the text of the statute.

cause .... Thus, to prevail on a <u>Franks</u> claim the defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his warrant affidavit.

<u>Id.</u>

Hoeffener's <u>Franks</u> hearing request was based on two grounds: (1) Detective Partney exaggerated his descriptions of the images obtained while using the Torrential Downpour software and he incorrectly labeled them child pornography when they were actually child erotica, (2) and Detective Partney failed to inform the issuing judge that the referenced images were not files that law enforcement officers had previously "flagged" as constituting child pornography ("files of interest"). The magistrate judge, after viewing the images, found that Detective Partney did not exaggerate or overstate the descriptions of the images; that, even if the referenced images could arguably be characterized as child erotica, the affidavit still established probable cause that the seized computers would contain child pornography; and that probable cause still existed if the affidavit was supplemented with the information that the referenced images were not flagged as "files of interest." The district court adopted the magistrate judge's findings and conclusions in their entirety.

Hoeffener's assertion that the search warrant affidavit presented "a skewed version of the facts to bolster probable cause" is without merit. The affidavit provided two file names and a description of the images contained within the files, which were downloaded from Hoeffener's computer. The court found the officer's descriptions of the images were consistent with the downloaded files. The officer testified at length why he believed the images contained child pornography. The record is devoid of any evidence to support Hoeffener's assertion that the officer deliberately or recklessly included a false statement.

-10-

Similarly, the fact that a program did not flag an image as a "file of interest" would not change an issuing judge's probable cause determination when the affiant had personally reviewed the images that he attested contained child pornography. The record demonstrates that the referenced images were reviewed independently by two officers and both concluded they constituted child pornography. Because a program did not highlight these files as possibly containing child pornography, does not establish they do not contain child pornography. The record is devoid of any evidence to support Hoeffener's assertion that the affiant's omission was necessary to the probable cause determination. The magistrate judge did not abuse her discretion in denying Hoeffener's request for a <u>Franks</u> hearing.

### 4. *Motion to Suppress Statements*

A district court's determination that a person was not in custody for purposes of <u>Miranda</u> is reviewed *de novo* and its factual findings for clear error. <u>United States v. Mshihiri</u>, 816 F.3d 997, 1004 (8th Cir. 2016) (citing <u>United States v. LeBrun</u>, 363 F.3d 715, 719 (8th Cir.2004) (en banc)). "To determine whether a suspect was in custody, we ask 'whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave.'" <u>United States v. Laurita</u>, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting <u>United States v. Vinton</u>, 631 F.3d 476, 481 (8th Cir. 2011)). We have set forth six non-exclusive indicia of custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were

employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). "The first three ... factors may be fairly characterized as mitigating factors," and the last "three factors may be characterized as coercive factors." Id. "These factors, however, are not exclusive, and custody 'cannot be resolved merely be counting up the number of factors on each side of the balance and rendering a decision accordingly.'" United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007) (quoting United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004)).

Hoeffener moved to suppress the statements he made during the in-vehicle discussion with Sergeant Kavanaugh and his post-Miranda statements made at the police station. The court denied Hoeffener's motion, finding that Hoeffener was not in custody and entitled to Miranda warnings prior to his in-vehicle confession because Hoeffener willingly entered Sergeant Kavanaugh's vehicle, voluntarily responded to Sergeant Kavanaugh's questions, and presented no evidence that he was restrained as though he was under formal arrest or acquiesced because of a coercive or police dominated environment. The court also rejected Hoeffener's argument that his post-Miranda statements must be suppressed because there was no evidence that law enforcement intentionally delayed reciting a Miranda warning in order to elicit a confession.

The district court found that when Hoeffener was asked if he would sit in the front seat of Sergeant Kavanaugh's unmarked vehicle to talk about the reason for the search warrant, Hoeffener willingly and voluntarily did so. Hoeffener was not handcuffed or otherwise restrained. Hoeffener was inquisitive but polite and cooperative during the questioning. At no time did Hoeffener ask to get out of the

-12-

vehicle. After approximately five minutes of talking, Hoeffener admitted to using uTorrent to download pictures and movies containing child pornography. Because the district court's findings are not clearly erroneous and are well-supported by the evidence, we conclude Hoeffener was not in custody during the in-vehicle questioning for purposes of Miranda.

Because Hoeffener has failed to provide any evidence that Sergeant Kavanaugh's failure to provide Miranda warnings was a calculated effort to circumvent Miranda, his motion to suppress his post-Miranda statements pursuant to Missouri v. Seibert, 542 U.S. 600 (2004), was properly denied.

B.     **Sentencing Issues**

Where, as in this case, the sentence imposed is within the advisory Guidelines range, we presume the sentence is reasonable. United States v. Outlaw, 946 F.3d 1015, 1020 (8th Cir. 2020). It is the defendant's burden to rebut the presumption and show that the sentence should have been lower. United States v. Manning, 738 F.3d 937, 947 (8th Cir. 2014). Hoeffener's disagreement with the weight the district court gave to his age and sex offender treatment history is insufficient to rebut the presumption of reasonableness.

Hoeffener acknowledges that the court considered his age, but asserts it erred by failing to articulate how much weight this factor was given. Hoeffener cites no authority requiring the court to articulate with precision how much weight it has given to a particular factor. Indeed, his argument is inconsistent with our precedent. See United States v. Leonard, 785 F.3d 303, 306 (8th Cir. 2015) (determining the district court adequately explained its sentencing decision when it expressly stated that it had considered the defendant's sentencing arguments).

Hoeffener's second alleged error is also unavailing. The court declined to give much weight to the sex offender treatment Hoeffener participated in, emphasizing the counseling began after Hoeffener appeared in court and placing greater weight on evidence demonstrating the conduct in this case was not some recent aberration, that Hoeffener had admitted to searching and downloading child pornography for ten years, that the nature and scope of the images were "troubling and disturbing," and the unconvincing explanation Hoeffener provided for the sexual contact he had with his daughter when she was a toddler. The district court's explanation for its decision to sentence within the advisory Guidelines range, with or without the presumption of reasonableness, was adequate. The imposition of what effectively amounts to a life sentence in child pornography cases is not unprecedented or *per se* substantively unreasonable. E.g., United States v. McCoy, 847 F.3d 601, 607 (8th Cir. 2017) (affirming term of 121 months' imprisonment for a defendant who was 72 years old with an aggressive form prostate cancer); United States v. Strong, 773 F.3d 920, 926 (8th Cir. 2014) (affirming a sentence of 110 years in prison for a 76-year old defendant); United States v. Betcher, 534 F.3d 820, 827 (8th Cir. 2008) (affirming a sentence of 750 years in prison, the statutory maximum for each count of production of child pornography, receipt of child pornography, and possession of child pornography).

## III. Conclusion

The judgment of the district court is affirmed.

_____